IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| NATHANIEL OCHS, § | |
| § | |
| Plaintiff, § | |
| § | C.A. NO. 5:24-CV-00309-OLG |
| v. § | |
| § | |
| TJX COMPANIES, INC. d/b/a TJX § | |
| DISTRIBUTION CENTER, § | |
| § | |
| Defendant. § | |

**DEFENDANT THE TJX COMPANIES, INC.'S OPPOSED MOTION TO COMPEL ARBITRATION AND STAY LAWSUIT**

**I.      INTRODUCTION**

Plaintiff Nathaniel Ochs ("Plaintiff") sued The TJX Companies, Inc. ("TJX" or "Defendant") alleging claims of disability discrimination and retaliation in violation of the Texas Labor Code. The claims arise out of Plaintiff's employment and is thus subject to the Arbitration Agreement requiring Plaintiff to arbitrate any employment-related disputes according to the rules expressly outlined within the Arbitration Agreement.

The Arbitration Agreement is enforceable under the Federal Arbitration Act ("FAA") and by its terms obligates Plaintiff to arbitrate his claims. Indeed, several courts recently upheld and enforced as valid the same Arbitration Agreement. *See, e.g., Reyes v. Marshalls of CA, et al,* Case No. 22STCV02446, (Superior Court of California, County of Los Angeles, 2023) (granting motion to compel arbitration where plaintiff was expressly advised of opportunity to opt out of arbitration), *Spaeny v. The TJX Companies, et al*., CV 21-6649-DMG (MARx), 2022 WL 334186, (C.D. Cal. Feb. 3, 2022) (granting motion to compel arbitration after plaintiff acknowledged receipt of the Arbitration Agreement and did not opt out); *Johnson v. Marshalls of*

*CA, LLC,* No. 56-2021-00556509-CU-OE-VTA, 2021 WL 5506713, (Cal. Super. Nov. 3, 2021) (granting motion to compel arbitration where plaintiff signed acknowledgment of receiving packet and opt out provision); *Dillon v. T.J. Maxx of CA, LLC, et al,* Case No. 30-2019-01051482-CU-WT-CJC, (Superior Court of California, County of Orange, 2019) (granting motion to compel arbitration after plaintiff failed to timely opt out of the Arbitration Agreement and continued to work for defendant), *Romero v. Marshalls of CA LLC, et al*, Case No. 2:24-cv-00709-JLS-MRW, (C.D. Cal. Apr. 25, 2024) (granting motion to compel arbitration where plaintiff acknowledged receipt of the Arbitration Agreement and did not opt out).[1]  However, rather than honor his contractual obligations, Plaintiff filed this lawsuit and has refused to stipulate to arbitration pursuant to the terms of the Arbitration Agreement to which he agreed to be bound.  Accordingly, TJX has no alternative but to file this Motion seeking an order from this Court: (1) compelling Plaintiff to submit his claims to arbitration; and (2) staying this action during the pendency of arbitration proceedings.

II.     **STATEMENT OF FACTS**

   A.     **TJX's Optional Arbitration Program For Associates.**

Beginning in January 2014, TJX, which is a national and worldwide off-price retailer of apparel and home fashions, and its subsidiaries implemented an arbitration program offering all current and new non-Union employees (referred to as "Associates") the opportunity to enter into individual arbitration agreements.  (*See* Ex. 1, Declaration of W. Alex Koch ("Koch Decl."), ¶ 6).  Since that time, TJX provides the same opportunity to all new non-Union Associates.  (*Id.*).

---

[1] The court orders from the *Reyes*, *Spaeny, Johnson, Dillon*, and *Romero* cases are attached to this Motion as Exhibits 2-6.

TJX does not require Associates to sign arbitration agreements. (*Id.*, ¶ 7). Rather, TJX presents bilateral arbitration agreements to its Associates as a dispute resolution option—not as an ultimatum and not as a condition of being hired or continued employment. (*Id.*).

B. **Plaintiff Received The Arbitration Agreement At The Start Of His Employment.**

On November 15, 2021, NBC San Antonio Merchants, LLC ("NBC") hired Plaintiff to work at its San Antonio, Texas Distribution Center. NBC is a Delaware limited liability corporation with its principal place of business in Framingham, Massachusetts and is a wholly owned subsidiary of TJX. (Koch Decl., ¶¶ 2, 8).

TJX disseminates a New Hire Packet ("Packet") to all of its newly hired non-Union Associates. (*Id.*, ¶ 6). The Packet consists of three documents: (i) a five-page document titled "Arbitration Agreement," for the new employee to keep; (ii) two copies of a one-page document titled "Associate Acknowledgement Form," one for the new employee to keep and one to sign and return to TJX; and (iii) a document titled "Your Voice Your Choice," which summarizes options for resolving disputes, including open door communication and arbitration. (*See id.*, ¶ 6). Like all other non-Union employees, Plaintiff received the Packet containing the Arbitration Agreement, the Acknowledgment Form, and an opt-out form. (*See id.*, ¶¶ 6, 8, 9). Further, TJX uses tracking software to ensure that Plaintiff received the Packet which contains the Arbitration Agreement. (*See id.*, ¶ 8).

The Arbitration Agreement begins with the following statement, in bold, and conspicuously captioned "**ARBITRATION AGREEMENT**":

> This Arbitration Agreement is a legal contract and covers important issues relating to your rights. It is your sole responsibility to read it and understand it. You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so. It is your choice.

(Koch Decl., ¶ 9; Ex. A, Arbitration Agreement, p. 1 (emphasis in original)).

The Arbitration Agreement explains in succinct and straightforward terms the nature of the parties' mutual promises to arbitrate disputes. In relevant part, the first page of the Agreement states:

> [T]his agreement applies to any dispute, past, present or future, arising out of or related to Associate's employment with The TJX Companies, Inc. or one of its affiliates, successors, subsidiaries or parent companies (collectively, "TJX" or the "Company") or termination of employment regardless of its date of accrual and survives after the employment relationship terminates.
>
> . . .
>
> [T]his Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all such disputes to be resolved only by an Arbitrator through final and binding arbitration and not by way of court or jury trial. . . . Associate and Company agree that any dispute or controversy covered by this Agreement, or arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement, shall be resolved by binding arbitration in accordance with the Employment Arbitration Rules of the American Arbitration Association ("AAA Rules") then in effect, and not by court or jury trial. . . .
>
> . . .
>
> [T]his Agreement also applies, without limitation, to any claims under federal, state, local or other applicable law based upon or related to discrimination, harassment, retaliation, defamation (including clams of post-employment defamation or retaliation), breach of a contract or covenant, fraud, negligence, emotional distress, breach of fiduciary duty, trade secrets, unfair competition, wages or other compensation, breaks and rest periods, termination, tort claims, equitable claims, **and all other statutory or common law claims unless explicitly excluded below**. . .

(*Id.*, at p. 1, § 1 (emphasis added)).

### C. Plaintiff Had 45 Days To Opt-Out Of The Arbitration Agreement.

The Arbitration Agreement contains a section that is clearly titled, "**An Associate's Right To Decline Participation In The Agreement**." (*Id.*, at p. 4, § 8 (emphasis in original)). This section explains the following terms, among others:

- Participation in the Arbitration Agreement is "not a mandatory condition" of employment and therefore an Associate may decline participation "no later than 45 days from the Associate's date of hire. . . ." (*Id.*).

- An Associate may opt-out of the Arbitration Agreement either by (i) mailing "a signed and dated letter stating that the Associate declines to participate in this Agreement"; or (ii) visiting the company's intranet website (myTJX.com) and "typing the Associate's first and last name in the text field labeled 'I decline to participate in this Agreement. . . .'" (*Id.*).

- "If an Associate does not decline to participate in this Agreement within 45 days of the Associate's date of hire, continuing the Associate's employment constitutes mutual acceptance of the terms of this Agreement by the Associate and the Company." (*Id.*).

- An Associate who opts out of the Arbitration Agreement "will not be subject to any adverse employment action as a consequence of that decision. . . ." (*Id.*).

- "An Associate has the right to consult with counsel of the Associate's choice" in deciding whether to enter the Arbitration Agreement. (*Id.*).

Plaintiff's TJX portal shows that he did not opt-out of the Arbitration Agreement because it states that the "TJX New Hire Agreement," which includes the Arbitration Agreement, was "Not Started." (Koch Decl., ¶ 11, Ex. D). This means that Plaintiff never opted out of the Arbitration Agreement. (*Id.*).

### D. Plaintiff Is Bound By The Arbitration Agreement Because He Did Not Opt-Out.

As noted, TJX's company records show that Plaintiff did not opt out of the Arbitration Agreement. (*Id.*). Plaintiff did not decline the Arbitration Agreement, either by mail submission or electronically, within 45 days after his November 15, 2021 start of employment, or any time thereafter. (*Id.*). Thus, Plaintiff automatically opted-in to agree to participate in the Arbitration Agreement.

In addition, Plaintiff continued his employment with TJX until January 4, 2023, long after his 45-day window to reject the Arbitration Agreement ended. (Koch Decl., ¶ 10). Thus, Plaintiff is bound by the Arbitration Agreement.

E.  **Plaintiff Filed A Lawsuit Against TJX In Violation Of His Agreement To Arbitrate Any Claims.**

On March 11, 2024, Plaintiff filed a Texas state court lawsuit alleging claims for disability discrimination and retaliation under the Texas Labor Code in connection with his employment. TJX removed the lawsuit to this Court on March 27, 2024.

F.  **Plaintiff Has Refused TJX's Requests To Arbitrate His Claims.**

On April 1, 2024, TJX's counsel advised Plaintiff's counsel by email that Plaintiff was a party to an arbitration agreement, provided Plaintiff's counsel with a copy of the Arbitration Agreement, and asked if he was open to a joint motion to stay the lawsuit pending arbitration. (*See* Ex. 7, Declaration of Linda C. Schoonmaker ("Schoonmaker Decl."), ¶ 3). On April 8, 2024, TJX's counsel sent Plaintiff's counsel documents by email demonstrating that Plaintiff had not opted out of the TJX Arbitration Agreement. (*Id.*, ¶ 4). On April 16, 2024 Plaintiff's counsel advised TJX's counsel that Plaintiff would oppose arbitration, thereby necessitating this opposed Motion. (*Id.*)

III.  **THE COURT SHOULD COMPEL ARBITRATION**

A.  **The Court Should Compel Plaintiff To Arbitrate His Claims.**

The Agreement is enforceable under the Federal Arbitration Act ("FAA"), and Plaintiff cannot establish any defense to arbitration in this case. Accordingly, Plaintiff's claims should be compelled to arbitration.

B.  **The FAA Governs the Agreement.**

The FAA broadly provides that: "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-25

(1991). Commerce is "a broadly construed term under the FAA." *Specialty Healthcare Mgmt. Inc. v. St. Mary Parish Hosp.*, 220 F.3d 650, 653 (5th Cir. 2000); *Fountoulakis v. Stonhard, Inc.*, No. CIV.A.3:02-CV-2434-D, 2003 WL 21075931, at *4, n. 12 (N.D. Tex. May 9, 2003); *Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*, 978 F. Supp. 266, n. 145 (S.D. Tex. 1997) (internal citations omitted). The amount of commerce considered in the contract need not be substantial. *Trans Chem. Ltd.*, 978 F. Supp. at 300 (citations omitted). "As other courts have explained, this is not a rigorous inquiry; the contract need only be 'related to' commerce to fall within the FAA." *Id*. Courts construe the "involving commerce" language in the FAA to include contracts relating to employment. *See Cir. City Stores, Inc. v. Adams,* 532 U.S. 105, 119-23 (2001).

Here, the nature of TJX's national retail business, the parties' employment relationship, and Plaintiff's at-will employment with TJX evidences a transaction involving commerce such that the FAA applies. *Id*. at 121. Moreover, the Arbitration Agreement itself leaves no room for debate on the applicability of the FAA. It expressly states that the Agreement is governed by the Federal Arbitration Act. (Koch Decl., Ex. A, p. 1). The parties' Arbitration Agreement and stated intention should therefore control. *See In re Scott,* 100 S.W.3d 575, 580 (Tex. App.—Fort Worth 2003, no pet.) ("If an agreement is governed by the FAA, any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration.").

Under this authority, the Arbitration Agreement qualifies as a contract "involving commerce" subject to the FAA. As noted, TJX is a national and worldwide off-price retailer of apparel and home fashions—thus the Arbitration Agreement is a contract "involving commerce" as defined under the FAA. Plaintiff's claims against TJX, in turn, arise out of his employment

relationship with TJX, an employer who is regularly engaged in activities related to interstate commerce.  Accordingly, the FAA applies to the Arbitration Agreement.

      **C.**    **Both the FAA and Texas Law Favor Enforcement of Arbitration Agreements**.

      **1.**    **The FAA favors enforcement of arbitration agreements.**

The FAA permits an aggrieved party to file a motion to compel arbitration when an opposing "party has failed, neglected, or refused to comply with an arbitration agreement." *See Am. Bankers Ins. Co. of Fla v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006).  "The United States Supreme Court has. . . repeatedly affirmed that the FAA established 'a liberal federal policy favoring arbitration agreements.'"  *Marsoft, Inc. v. United LNG, L.P.,* No. H-13-2332, 2014 WL 1338709, at *4 (S.D. Tex. March 31, 2014) (citing *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012)).  Accordingly, "[t]he party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity," and "[a] court must resolve all doubts concerning arbitrability in favor of arbitration." S*ee Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004);  *Elite Precision Fab., Inc. v. Gen. Dynamics Land Sys., Inc.*, No. H-14-2086, 2015 WL 9302843, at *4 (S.D. Tex. Dec. 18, 2015); *see also Marsoft*, 2014 WL 1338709, at *4 ("[w]here the contract contains an arbitration clause, there is a presumption of arbitrability" that "is so strong that only 'the existence of an express provision excluding the grievance from arbitration' or 'the most forceful evidence of a purpose to exclude the claim from arbitration' will rebut it.").

Where, as here, there is an Arbitration Agreement, the claim is covered by the Agreement, and the party opposing arbitration cannot establish a defense to enforcement of the Agreement, the court must compel arbitration.  9 U.S.C. §§ 3,4; *see Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of

discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

It is well settled that the FAA expresses a "congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The Supreme Court explained that the FAA's "principal purpose . . . is to ensure that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 344 (2000) (internal quotations and citations omitted). Because federal policy favors arbitration, courts are required to construe arbitration clauses as broadly as possible and resolve any doubts regarding arbitrability in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24 25. According to the Supreme Court, the FAA "leaves no room for the exercise of discretion by a [trial] court, but instead mandates that [trial] courts shall direct the parties to proceed to arbitration" on all claims covered under the agreement to arbitrate. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

2. **Texas law also favors enforcement of arbitration agreements.**

The Arbitration Agreement at issue here presents no conflict with Texas law, which also strongly favors settling disputes by arbitration. *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 90 (Tex. 1996); *see also Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000), cert denied, 531 U.S. 1013 (2000). As such, every reasonable presumption must be decided in favor of arbitration. *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.,* 921 F.3d 522, 537 (5th Cir. 2019). Thus, the party opposing arbitration bears the burden of proving that no valid arbitration agreement exists as to the matters in controversy. *Ellis v. Schlimmer,* 337 S.W.3d 860, 861–62 (Tex. 2011); *Prudential Sec. v. Banales,* 860 S.W.2d 594, 596-97 (Tex. App.—Corpus Christi 1993, no writ). A court should not deny arbitration unless it

can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue. *In re Scott*, 100 S.W.3d at 580. Where a court determines that an arbitration provision is ambiguous, the court must resolve the ambiguity in favor of arbitrability. *Id.* (*citing Mouton v. Metro. Life Ins. Co.*, 147 F.3d 453, 456 (5th Cir. 1998)).

        D.      **The FAA Requires That the Arbitration Agreement Be Enforced.**

As noted, a party seeking to compel arbitration under the FAA must establish that: (i) there is a valid arbitration clause and (ii) the claims in dispute fall within that agreement's scope. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (*citing In re Kellogg Brown & Root,* 166 S.W.3d 732, 737 (Tex. 2005)). Once the parties come "forward with a presumptively valid arbitration agreement, the court must order the parties to arbitrate." *Nationwide of Bryan v. Dyer,* 969 S.W.2d 518, 520 (Tex. App.—Austin 1998) (*citing Pepe Int'l Dev. Co. v. Pub Brewing Co.*, 915 S.W.2d 925, 929 (Tex. App.—Houston [1st Dist.] 1996, no writ)). Applying this standard, Plaintiff must arbitrate his claims against TJX.

In determining the scope of the arbitration provision contained in the Arbitration Agreement, this court resolves all doubts in favor of arbitration. *Rachal v. Reitz*, 403 S.W.3d 840, 850 (Tex. 2013) (*citing Ellis,* 337 S.W.3d at 862). Under Texas law, arbitration clauses—markedly those requiring arbitration of claims "arising from" or "relating to" an individual's employment—are interpreted as broad provisions capable of expansive reach. *See, e.g., Firstlight Fed. Credit Union v. Loya,* 478 S.W.3d 157, 171 (Tex. App.—El Paso 2015, no pet.); *FD Frontier Drilling (Cypress) Ltd. v. Didmon,* 438 S.W.3d 688 (Tex. App.—Houston [14th Dis. 2014], pet. denied).

Here, the FAA and Texas law mandate that the Arbitration Agreement be enforced and Plaintiff arbitrate his claims against TJX. First, the Agreement constitutes a valid, enforceable contract. Second, Plaintiff's claims fall within the stated scope of the Arbitration Agreement. As a result, the Arbitration Agreement is enforceable and requires arbitration of Plaintiff's claims as shown below.

    **1.    The Arbitration Agreement is Valid and Enforceable.**

A valid arbitration agreement governing employment-related disputes exists between Plaintiff and TJX. The fact that Plaintiff did not expressly accept the Agreement is no bar to compelling arbitration. Texas courts have upheld arbitration agreements with no such express acceptance. *See In re Dillard Dept. Stores, Inc.*, 198 S.W.3d 778, 781 (Tex. 2006) (upholding an arbitration agreement when the employer did not have a signed arbitration acknowledgment form, but the employee was on notice of the policy); *see In re Halliburton,* 80 S.W.3d 566 (Tex. 2002) (enforcing an arbitration provision when the employee was put on notice of the policy, but did not sign any formal acknowledgment). Further, several trial courts have recently upheld and enforced this same Arbitration Agreement in cases involving the same opt-in/opt-out process, similar claims, and the same factual context. *See, e.g., Reyes v. Marshalls of CA, et al,* Case No. 22STCV02446, (Superior Court of California, County of Los Angeles, 2023) (granting motion to compel arbitration where plaintiff was expressly advised of opportunity to opt out of arbitration), *Spaeny v. The TJX Companies, et al*., CV 21-6649-DMG (MARx), 2022 WL 334186, (C.D. Cal. Feb. 3, 2022) (granting motion to compel arbitration after plaintiff acknowledged receipt of the Arbitration Agreement and did not opt out); *Johnson v. Marshalls of CA, LLC,* No. 56-2021-00556509-CU-OE-VTA, 2021 WL 5506713, (Cal. Super. Nov. 3, 2021) (granting motion to compel arbitration where plaintiff signed acknowledgment of receiving packet and opt out

provision); *Dillon v. T.J. Maxx of CA, LLC, et al,* Case No. 30-2019-01051482-CU-WT-CJC, (Superior Court of California, County of Orange, 2019) (granting motion to compel arbitration after plaintiff failed to timely opt out of the Arbitration Agreement and continued to work for defendant), *Romero v. Marshalls of CA LLC, et al*, Case No. 2:24-cv-00709-JLS-MRW, (C.D. Cal. Apr. 25, 2024) (granting motion to compel arbitration where plaintiff acknowledged receipt of the Arbitration Agreement and did not opt out). (*See* Exs. 2-6).

2. **Plaintiff's claims fall within the scope of the Arbitration Agreement.**

The plain language of the Arbitration Agreement establishes that Plaintiff's asserted claims are subject to arbitration. The Arbitration Agreement provides "[T]his agreement applies to any dispute, past, present or future, arising out of or related to Associate's employment with The TJX Companies, Inc. or one of its affiliates, successors, subsidiaries or parent companies (collectively, "TJX" or the "Company") or termination of employment regardless of its date of accrual and survives after the employment relationship terminates." (Koch Decl., Ex. A at p. 1, § 1). The legal pleading in this lawsuit, which was an Original Petition since it was filed in Texas state court, demonstrates that each of Plaintiff's claims against TJX arise out of his employment. The language of the Original Petition also demonstrates that each of Plaintiff's claims against TJX seeks to recover for alleged discrimination pursuant to a Texas statute. His claims against TJX therefore fall within the scope of the Arbitration Agreement.

**III. The Federal Arbitration Act Requires Staying This Proceeding.**

Under the FAA, upon application of a party, a court "shall" stay further proceedings in a legal action if it finds that "any issue" in the case should be referred to arbitration under an agreement in writing for such arbitration. 9 U.S.C. § 3. *See also Heritage Cap. Corp. v. Christie's Inc.*, No. 3:16-CV-3404-D, 2017 WL 1550514, at * 6 (N.D. Tex. May 1, 2017)

("When the court determines that all claims in a lawsuit are arbitrable, the court must stay the suit pending arbitration."); *Dow v. Keller Williams Realty, Inc.*, 625 F.Supp.3d 556, 569 (N.D. Tex. 2022) (finding valid arbitration agreement and staying case pending resolution of arbitration). Accordingly, this lawsuit should be stayed rather than dismissed.

## IV.  CONCLUSION

For the reasons set forth above, TJX respectfully requests that the Court order Plaintiff to arbitrate his claims and stay this case pending the completion of arbitration.

Respectfully submitted,

**SEYFARTH SHAW LLP**

By:  */s/ Linda C. Schoonmaker*
Linda C. Schoonmaker
State Bar No. 17806300
Elizabeth L. Humphrey
State Bar No. 24083217
SEYFARTH  SHAW LLP
700 Milam Street, Suite 1400
Houston, Texas  77002
Telephone: (713) 860-0083
Facsimile: (713) 225-2340
lschoonmaker@seyfarth.com
ehumprey@seyfarth.com

**ATTORNEYS FOR DEFENDANT**

310547535v.2

**CERTIFICATE OF CONFERENCE**

I certify that I conferred with counsel for Plaintiff Nathaniel Ochs on April 1, 8, and 16, 2024 regarding his agreement with or opposition to this motion. On April 16, 2024, Plaintiff's counsel indicated that he is opposed to this motion.

                                                */s/ Linda C. Schoonmaker*
                                                Linda C. Schoonmaker

**CERTIFICATE OF SERVICE**

I hereby that on the 7th day of May, 2024, a copy of the above and foregoing instrument was served by CM/ECF on:

    Thomas J. Crane
    Law Office of Thomas J. Crane
    900 N.E. Loop 410, Suite D306
    San Antonio, Texas 78209

                                                */s/ Linda C. Schoonmaker*
                                                Linda C. Schoonmaker

310547535v.2