**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| NATHANIEL OCHS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | C.A. NO.  5:24-CV-00309-OLG |
| v. | § | |
| | § | |
| TJX COMPANIES, INC. d/b/a TJX | § | |
| DISTRIBUTION CENTER, | § | |
| | § | |
| Defendant. | § | |

**APPENDIX TO DEFENDANT THE TJX COMPANIES, INC.'S
OPPOSED MOTION TO COMPEL ARBITRATION AND STAY LAWSUIT**

**INDEX TO APPENDIX**

| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| 1 | Declaration of W. Alex Koch<br>- Ex. A - Arbitration Agreement<br>- Ex. B - N. Ochs Signed Acknowledgment Form<br>- Ex. C - Your Voice, Your Choice – TJX Arbitration Agreement – Option to Decline Participation<br>- Ex. D - Screenshot of Plaintiff's TJX Portal showing stating that the TJX New Hire Agreement was "Not Started" | 1<br>6<br>12<br>14<br>17 |
| 2 | Minute Order, *Reyes v. Marshalls of CA, et al,* Case No. 22STCV02446, (Superior Court of California, County of Los Angeles, 2023). | 19 |
| 3 | Minute Order, *Spaeny v. The TJX Companies, et al.,* CV 21-6649-DMG (MARx), 2022 WL 334186, (C.D. Cal. Feb. 3, 2022). | 36 |
| 4 | Minute Order, *Johnson v. Marshalls of CA, LLC,* No. 56-2021-00556509-CU-OE-VTA, 2021 WL 5506713, (Cal. Super. Nov. 3, 2021). | 41 |
| 5 | Minute Order, *Dillon v. T.J. Maxx of CA, LLC, et al,* Case No. 30-2019-01051482-CU-WT-CJC, (Superior Court of California, County of Orange, 2019). | 44 |
| 6 | Order Granting Motion to Compel, *Romero v. Marshalls of CA LLC, et al,* Case No. 2:24-cv-00709-JLS-MRW, (C.D. Cal. Apr. 25, 2024) | 58 |
| 7 | Declaration of Linda Schoonmaker | 61 |

Respectfully submitted,

**SEYFARTH SHAW LLP**

By:  */s/ Linda C. Schoonmaker*
Linda C. Schoonmaker
State Bar No. 17806300
Elizabeth L. Humphrey
State Bar No. 24083217
SEYFARTH  SHAW LLP
700 Milam Street, Suite 1400
Houston, Texas  77002
Telephone: (713) 860-0083
Facsimile: (713) 225-2340
lschoonmaker@seyfarth.com
ehumprey@seyfarth.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby that on the 7th day of May,  2024, a copy of the above and foregoing instrument

was served by CM/ECF on:

Thomas J. Crane
Law Office of Thomas J. Crane
900 N.E. Loop 410, Suite D306
San Antonio, Texas 78209

*/s/ Linda C. Schoonmaker*
Linda C. Schoonmaker

2

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**



| | | |
|---|---|---|
| NATHANIEL OCHS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | C.A. NO.  5:24-CV-00309 |
| v. | § | |
| | § | |
| TJX COMPANIES, INC. d/b/a TJX | § | |
| DISTRIBUTION CENTER, | § | |
| | § | |
| Defendant. | | |

**DECLARATION OF W. ALEX KOCH IN SUPPORT OF DEFENDANT'S**
**MOTION TO COMPEL ARBITRATION AND STAY ACTION**

I, W. Alex Koch, hereby declare as follows:

1.      I know the facts set forth in this declaration to be true based on my own personal knowledge and/or based on my review of business records that NBC San Antonio Merchants, LLC ("NBC") creates and maintains in the ordinary course of business. With respect to those business records, the entries are made in a timely manner by people with knowledge of the information, and it is the regular practice of NBC's business to maintain such records. If called as a witness, I could and would testify as to the accuracy of the facts set forth in this declaration.

2.      I am the Assistant Vice President Director of Associate Relations for The TJX Companies, Inc. ("TJX"), and I work at TJX's corporate offices in Framingham, Massachusetts. I oversee employee relations for NBC.  NBC is a Delaware limited liability corporation with its principal place of business in Framingham, Massachusetts and is a wholly owned subsidiary of TJX. I am familiar with NBC's policies and procedures. I am also familiar with the electronic systems used by NBC to maintain personnel records pertaining to each of its employees. In my position, I have access to information and data related to NBC's personnel operations.

3.      TJX and its subsidiaries, including NBC, are engaged in interstate commerce and sell goods and services across the United States, including 49 states.

4.      NBC maintains personnel records in the ordinary course of business, and it is the regular practice of the company to make personnel records at or near the time of the personnel event they record, and are made by, or from information transmitted by, a person with knowledge of the events the records record. I have reviewed employment records for Plaintiff Nathaniel Ochs ("Plaintiff"), which are maintained by NBC in the ordinary course of its business.

5.      NBC refers to all of its employees as "Associates."

6.      Beginning in approximately January 2014, TJX and certain of its subsidiaries, including NBC, implemented an arbitration program offering all current and new non-Union Associates the opportunity to enter individual arbitration agreements. Since that time, NBC has offered every new Associate the opportunity to enter into an individual arbitration agreement.

6.      Every new non-Union NBC Associate receives a New Hire Packet ("Packet"), consisting of three documents: (i) the Arbitration Agreement; (ii) an Associate Acknowledgement form; and (iii) a document titled "Your Voice Your Choice-TJX Arbitration Agreement – Option to Decline Participation," which summarizes options for resolving disputes, including open door communication and arbitration. The Associate Packet is distributed in hardcopy form and can also be retrieved at the company's intranet website, myTJX.com.

7.      NBC has not forced any Associate to enter into the Arbitration Agreement. It is a bilateral arbitration agreement that is presented to Associates as a dispute resolution option. It is not mandatory. Associates can and do decline the Arbitration Agreement and still obtain and continue employment with NBC.

2

**APPENDIX 3**

8.      On November 15, 2021, NBC hired Plaintiff to work as a Distribution Center Supervisor in its San Antonio, Texas Distribution Center.  TJX disseminates a New Hire Packet ("Packet") to all of its newly hired non-Union Associates. The Packet consists of three documents: (i) a five-page document titled "Arbitration Agreement," for the new employee to keep; (ii) two copies of a one-page document titled "Associate Acknowledgement Form," one for the new employee to keep and one to sign and return to TJX; and (iii) a document titled "Your Voice Your Choice," which summarizes options for resolving disputes, including open door communication and arbitration.  TJX uses tracking software to ensure that Associates received the Packet which contains the Arbitration Agreement.

9.      While the Arbitration Agreement was created and distributed by TJX, it applies to all non-Union employees who were employed with TJX or one of its affiliates, successors, subsidiaries or parent companies, including NBC. A true and correct copy of the Arbitration Agreement, included as part of the Packet, and found in Plaintiff's personnel file, is attached hereto as Exhibit A.  A true and correct copy of the Associate Acknowledgment Form, which was included as part of that Associate Packet, is attached hereto as Exhibit B.  A true and correct copy of the "Your Voice, Your Choice - TJX Arbitration Agreement – Option to Decline Participation)", which was included as part of that Associate Packet, is attached hereto as Exhibit C.

10.     Following his receipt of the Arbitration Agreement in connection with his November 15, 2021 hire, Plaintiff had 45 days to decline to participate in the Arbitration Agreement by electronic or mail submission. The Arbitration Agreement allowed Plaintiff to opt-out by either using the pre-paid envelope to mail a signed letter declining participation, or logging onto myTJX.com to type his name at the bottom of the Agreement declining

3

participation. Plaintiff did not decline the Arbitration Agreement (either electronically or by mail submission) within 45 days after his hire, or any time thereafter, and continued his employment with NBC until January 4, 2023.

11.    Plaintiff's TJX portal shows that he did not opt-out of the Arbitration Agreement because it states that the "TJX New Hire Agreement," which includes the Arbitration Agreement, was "Not Started." This means that Plaintiff never opted out of the Arbitration Agreement. A true and correct copy of Plaintiff's TJX portal is attached here to as **Exhibit D.**

I declare under penalty of perjury under the laws of the State of Texas and the laws of the Commonwealth of Massachusetts that the foregoing is true and correct.

Executed this 3rd day of May, 2024, in Framingham, Massachusetts.

W. Alex Koch

4

# EXHIBIT A

ARBITRATION AGREEMENT

> **This Arbitration Agreement is a legal contract and covers important issues relating to your rights. It is your sole responsibility to read it and understand it. You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so.  It is your choice.**

## 1. How This Agreement Applies

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. Except as it otherwise provides, this Agreement applies to any dispute, past, present or future, arising out of or related to Associate's employment with The TJX Companies, Inc. or one of its affiliates, successors, subsidiaries or parent companies (collectively, "TJX" or the "Company") or termination of employment regardless of its date of accrual and survives after the employment relationship terminates. Nothing contained in this Agreement shall be construed to prevent or excuse Associate (individually or in concert with others) or the Company from utilizing the Company's existing internal procedures for resolution of complaints, and this Agreement is not intended to be a substitute for the utilization of such procedures.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all such disputes to be resolved only by an Arbitrator through final and binding arbitration and not by way of court or jury trial. Except as stated in paragraph 5 below, Associate and Company agree that any dispute or controversy covered by this Agreement, or arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement, shall be resolved by binding arbitration in accordance with the Employment Arbitration Rules of the American Arbitration Association ("AAA Rules") then in effect, and not by court or jury trial, to be held (unless the parties agree in writing otherwise) within 45 miles of where Associate is or was last employed by the Company. The AAA Rules may be found at www.adr.org or by searching for "AAA Employment Arbitration Rules" using a service such as www.Google.com or www.Bing.com or by contacting HR XPRESS (Tel. 888.627.6299) for a copy of the rules. If there is a conflict between the AAA Rules and this Agreement, this Agreement shall govern.

Except as it otherwise provides, this Agreement also applies, without limitation, to any claims under federal, state, local or other applicable law based upon or related to discrimination, harassment, retaliation, defamation (including claims of post-employment defamation or retaliation), breach of a contract or covenant, fraud, negligence, emotional distress, breach of fiduciary duty, trade secrets, unfair competition, wages or other compensation, breaks and rest periods, termination, tort claims, equitable claims, and all other statutory or common law claims unless explicitly excluded below.  The Agreement specifically covers, without limitation, all claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Equal Pay Act, Pregnancy Discrimination Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Polygraph Protection Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance), Affordable Care Act, Genetic Information Non-Discrimination Act, including amendments to all the foregoing statutes, and state and municipal statutes, if any, addressing the same or similar subject matters.

## 2. Limitations On How This Agreement Applies

**This Agreement does not apply to any action filed in any court prior to January 14, 2014.**

This Agreement does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits.

Regardless of any other terms of this Agreement, claims may be brought before and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include without limitation claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are excluded from the coverage of this Agreement.

## 3. Starting The Arbitration And Tolling Of Claims

The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period. The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. Any demand for arbitration made to the Company shall be provided to the Company's Legal Department at the following address: 770 Cochituate Road, Framingham, MA 01701, Attention: General Counsel. The Arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

All claims in arbitration are subject to the same statutes of limitation that would apply in court. With respect to a covered legal claim the applicable statute(s) of limitation will be tolled during the period in which TJX and the Associate are engaged in the facilitation phase of the Company's Open Door process (the "Tolling Period"). In order to trigger the Tolling Period the Associate must contact his or her HR Partner or call HR XPRESS. The Tolling Period may only be extended by written mutual agreement of the Associate and TJX.

## 4. How Arbitration Proceedings Are Conducted

In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator.  At a party's request or on the Arbitrator's own initiative, the Arbitrator may subpoena witnesses or documents for discovery purposes or for the arbitration hearing.

**5. Class Action, Collective Action, and Private Attorney General Waiver**

**The Associate and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis. Accordingly,**

**(a) There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ("Class Action Waiver").  The Class Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a class action and (2) a civil court of competent jurisdiction finds the Class Action Waiver is invalid, unenforceable, revocable, unconscionable, void or voidable. In such instances, the class action must be litigated in a civil court of competent jurisdiction.**

**(b) There will be no right or authority for any dispute to be brought, heard or arbitrated as a collective action ("Collective Action Waiver").  The Collective Action Waiver shall not be severable from this Agreement in any case in which  (1) the dispute is filed as a collective action and (2) a civil court of competent jurisdiction finds the Collective Action Waiver is invalid, unenforceable, revocable, unconscionable, void or voidable.  In such instances, the collective action must be litigated in a civil court of competent jurisdiction.**

**(c)  There will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general representative action ("Private Attorney General Waiver"). The Private Attorney General Waiver shall be severable from this Agreement in any case in which a civil court of competent jurisdiction finds the Private Attorney General Waiver is invalid, unenforceable, revocable, unconscionable, void or voidable.  In such instances and where the claim is brought as a private attorney general claim, such private attorney general claim must be litigated in a civil court of competent jurisdiction.**

Although an Associate will not be retaliated against, disciplined or threatened with discipline as a result of his or her exercising his or her rights under Section 7 of the National Labor Relations Act by the filing of or participation in a class, collective or representative action in any forum, the Company may lawfully seek enforcement of this Agreement and the Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver under the Federal Arbitration Act and seek dismissal of such class, collective or representative actions or claims. Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator.

The Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.

**6. Paying For The Arbitration**

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law.  The Company will pay the Arbitrator's and arbitration fees.

**7. The Arbitration Hearing And Award**

The parties will arbitrate their dispute before the Arbitrator, who shall confer with the parties regarding the conduct of the hearing and resolve any disputes the parties may have in that regard. Within 30 days of the close of the arbitration hearing, any party will have the right to prepare, serve on the other party and file with the Arbitrator a brief. The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement. The Arbitrator shall apply applicable law and will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration. The Arbitrator shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error.

**8. An Associate's Right To Decline Participation In The Agreement**

**Participation in this Agreement is not a mandatory condition of Associate's employment at the Company, and therefore an Associate may, no later than 45 days from the Associate's date of hire, decline participation in this Agreement.**  An Associate who does not want to participate in this Agreement may prepare a signed and dated letter stating that the Associate declines to participate in this Agreement. The letter should include the Associate's Associate Identification Number ("AIN") and the location where the Associate works. The Associate should mail his or her letter to The TJX Companies, Inc., PO Box 4714, Woburn, MA 01888-9962, and should retain a copy of the letter for his or her records. Alternatively, the Associate may decline to participate in this Agreement by accessing the Agreement through myTJX.com and typing the Associate's first and last name in the text field labeled "I decline to participate in this Agreement." **In order to effectively decline to participate, an Associate must indicate his or her desire to decline participation through one of the two methods described in this paragraph no later than 45 days from the Associate's date of hire.**

An Associate who timely declines to participate as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies in court and through a class or collective action without regard to this Agreement.

**If an Associate does not decline to participate in this Agreement within 45 days of the Associate's date of hire, continuing the Associate's employment constitutes mutual acceptance of the terms of this Agreement by the Associate and the Company. An Associate has the right to consult with counsel of the Associate's choice concerning this Agreement.**

APPENDIX 10

**9. Non-Retaliation**

It is against Company policy for any Associate to be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If any Associate believes that he or she has been retaliated against by anyone at the Company, the Associate should immediately report this to the Human Resources Department.

**10. Enforcement Of This Agreement**

This Agreement is the full and complete agreement relating to the formal resolution of disputes covered by this Agreement. Except as stated in paragraph 5, above, in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver, Collective Action Waiver, or Private Attorney General Waiver is deemed to be unenforceable, the Company and Associate agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration.

**Each Associate should retain a copy of this Agreement for his or her records.**

**An Associate may decline participation in this Agreement no later than 45 days from the Associate's date of hire, as provided in paragraph 8, above. If the Associate does not decline participation within 45 days of the Associate's date of hire, continuing Associate's employment constitutes mutual acceptance of the terms of this Agreement.**

# EXHIBIT B

DocuSign Envelope ID: B4BC8C92-DAF4-4CEE-A11A-107C0A4E8A55



# ASSOCIATE ACKNOWLEDGMENT FORM

I have received a TJX Arbitration Agreement and understand that I am covered by the Agreement unless I decline to participate, as described in paragraph 8 of the Agreement, within 45 days from my date of hire.

**AGREED:** The TJX Companies, Inc.

**AGREED:** Nathaniel Joseph Ochs
_____
*Associate Printed Name*

**AGREED:** Nathaniel Joseph Ochs
_____
*Associate Signature*

**DATE OF HIRE:** 11/15/2021
_____

Please retain a copy of this acknowledgment form for your records.



# EXHIBIT C



## ⊟  TJX Arbitration Agreement - Option to Decline Participation

**Welcome to the TJX Your Voice. Your Choice. website**

As a recently hired Associate, you have the option to decline participation in the TJX Arbitration Agreement that was included in your New Hire packet. If you wish to decline participation in the Agreement, please follow the steps below:

- Indicate your decision to decline participation in the Arbitration Agreement by selecting the radio button to decline, and enter your first and last name in the box provided
- If under 18 years old, you must obtain a parent or legal guardian's online consent
- Click the Finish button to submit your selection

*Please note that if you do not decline to participate in the TJX Arbitration Agreement within 45 days of your date of hire, continuing your employment constitutes your acceptance of the terms of the Agreement.*

*Thank you.*



[Click here to launch the Agreement.](#)

I UNDERSTAND AND AGREE TO THE USE OF AN ELECTRONIC METHOD OF SIGNATURE TO DEMONSTRATE MY DECISION TO DECLINE PARTICIPATION IN THE TJX ARBITRATION AGREEMENT. I UNDERSTAND THAT MY ELECTRONIC SIGNATURE IS AS LEGALLY BINDING AS AN INK SIGNATURE. I AGREE THAT THIS ELECTRONIC COMMUNICATION SATISFIES ANY LEGAL REQUIREMENT THAT SUCH COMMUNICATION BE IN WRITING. I UNDERSTAND THAT I MAY PRINT A COPY OF THIS AGREEMENT FOR MY RECORDS.

**APPENDIX 15**

☐ I am 18 years of age or older.

**Signature**                                                                   **Date:  Tuesday, March 26, 2024**

☐ I decline to participate in this Agreement. [_____] (Type first and last name)

## Please note your decision to decline is not complete until you type your name next to your selection and click the FINISH button below.

CONSENT OF PARENT OR LEGAL GUARDIAN (REQUIRED IF ASSOCIATE IS UNDER 18 YEARS OF AGE)

| Parent or Legal Guardian Signature (Type first and last name): | |
|---|---|
| Date: | |

REMINDER: In order to submit, you must click FINISH.

APPENDIX 16

# EXHIBIT D



APPENDIX 18

# EXHIBIT 2

**CONFORMED COPY**
**ORIGINAL FILED**
Superior Court of California
County of Los Angeles

**JAN 3 0 2023**

David W. Slayton, Executive Officer/Clerk of Court

*Superior Court of California*

*County of Los Angeles*

*Department 26*

| | |
|---|---|
| DANTE REYES, | Case No.: 22STCV02446 |
|        Plaintiff, | |
| | Hearing Date:  December 21, 2022 |
|     v. | |
| | [~~TENTATIVE~~] **ORDER RE:** |
| MARSHALLS OF CA, LLC; THE TJX |     DEFENDANTS' MOTION TO |
| COMPANIES, INC.; DELMY |     COMPEL ARBITRATION |
| HERNANDEZ, *et al.*, | |
|        Defendants. | |

*Procedural Background*

On January 20, 2022, Plaintiff Dante Reyes ("Plaintiff9") filed the instant wrongful termination action against Defendants Marshalls of CA, LLC ("Marshalls"), The TJX Companies, Inc. ("TJX"), and Delmy Hernandez ("Hernandez") (collectively "Defendants").  The complaint asserts fifteen causes of action for (1) Violation of Labor Code section 1102.5, (2) Wrongful Termination in Violation of Public Policy, (3) Discrimination on

$\frac{1}{4}$

1   the Basis of Disability/Perceived Disability, (4) Failure to Provide Reasonable Accommodation,

2   (5) Failure to Engage in the Interactive Process, (6) Retaliation in Violation of the Fair

3   Employment and Housing Act ("FEHA"), (7) Failure to Investigate Harassment and

4   Discrimination in Violation of FEHA, (8) Failure to Correct and Remedy Discrimination and

5   Harassment in Violation of FEHA, (9) Harassment on the Basis of Disability, (10) Unpaid Meal

6   Periods, (11) Unpaid Rest Periods, (12) Violation of Labor Code section 226, (13) Violation of

7   Labor Code section 203, (14) Unfair Business Practices, and (15) Intentional Infliction of

8   Emotional Distress. On February 24, 2022, the instant action was removed to federal court. On

9   July 20, 2022, the United States District Court remanded the instant action.

10        On August 24, 2022, Defendants filed the instant motion to compel arbitration. On

11   December 8, 2022, Defendants filed a reply which indicated that an opposition had been

12   served. On December 15, 2022, the Court continued the instant motion to permit Plaintiff an

13   opportunity to file the opposition. On December 15, 2022, Plaintiff filed the unfiled opposition.

14

15   ***Request for Judicial Notice***

16        In support of the instant motion to compel arbitration, Defendants request judicial notice

17   of the following:

18      1. February 3, 2022 Court Order granting The TJX Companies, Inc.'s Motion to Compel

19          Arbitration in the matter of *Spaeny v. The TJX Companies, Inc. et al.*, United States

20          District Court for the Central District of California, Case No. 21-6649-DMG (MARx)

21      2. November 3, 2021 Court Order granting Marshalls of CA, LLC's Motion to Compel

22          Arbitration in the matter of *Johnson v. Marshalls of CA, LLC*, Superior Court of the

23          State of California for the County of Ventura, Case No. 56-2021-00556509-CU-OE-

24          VTA

25

3.  July 31, 2019 Court Order granting T.J. Maxx of CA, LLC's Motion to Compel Arbitration in the matter of *Dillon v. T.J. Maxx of CA, LLC*, Superior Court of the State of California for the County of Orange, Case No. 30-2019-01051482-CU-WT-CJC

As the Court may take judicial notice of court records and actions of the State, (See Evid. Code, § 452(c)(d)), Defendants' unopposed request for judicial notice is GRANTED.  However, the Court will not take judicial notice of the truth of hearsay assertions or findings in the court documents. (See *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1375.)

*Legal Standard*

California law incorporates many of the basic policy objectives contained in the Federal Arbitration Act, including a presumption in favor of arbitrability.  (See *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971-72.) Under Code of Civil Procedure section 1281, a "written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."

"On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that:

(a) The right to compel arbitration has been waived by the petitioner; or

(b) Grounds exist for the revocation of the agreement.

(c) A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions

1   and there is a possibility of conflicting rulings on a common issue of law or fact. . . ."  (CCP

2   §1281.2.)

3        The right to arbitration depends upon contract; a petition to compel arbitration is simply a

4   suit in equity seeking specific performance of that contract.  (*Marcus & Millichap Real Estate*

5   *Inv. Brokerage Co. v. Hock Inv. Co.* (1998) 68 Cal.App.4th 83, 88.)  When presented with a

6   petition to compel arbitration, the trial court's first task is to determine whether the parties have

7   in fact agreed to arbitrate the dispute.  (*Id.*)

8        "*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394] explained:

9   '[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a

10   written agreement to arbitrate the controversy, the court itself must determine whether the

11   agreement exists and, if any defense to its enforcement is raised, whether it is enforceable.

12   Because the existence of the agreement is a statutory prerequisite to granting the petition, the

13   petitioner bears the burden of proving its existence by a preponderance of the evidence.  If the

14   party opposing the petition raises a defense to enforcement—either fraud in the execution

15   voiding the agreement, or a statutory defense of waiver or revocation (see §1281.2(a), (b))—that

16   party bears the burden of producing evidence of, and proving by a preponderance of the

17   evidence, any fact necessary to the defense.' (*Rosenthal*, supra, at 413.)  According to *Rosenthal*,

18   facts relevant to enforcement of the arbitration agreement must be determined 'in the manner . . .

19   provided by law for the . . . hearing of motions.' (*Rosenthal*, supra, at 413, quoting §1290.2.)

20   This 'ordinarily mean[s] the facts are to be proven by affidavit or declaration and documentary

21   evidence, with oral testimony taken only in the court's discretion.' (*Rosenthal*, supra, at 413–

22   414; . . .)." (*Hotels Nevada v. L.A. Pacific Center, Inc.* (2006) 144 Cal.App.4th 754, 761-62.)

23

24   *Discussion*

25   Existence of an Agreement to Arbitrate

4 7

1       Under both the Federal Arbitration Act and California law, arbitration agreements are

2  valid, irrevocable, and enforceable, except on such grounds that exist at law or equity for voiding

3  a contract. (*Winter v. Window Fashions Professions, Inc.* (2008) 166 Cal.App.4th 943, 947.)  In

4  ruling on a motion to compel arbitration, the court must first determine whether the parties

5  actually agreed to arbitrate the dispute, and general principles of California contract law help

6  guide the court in making this determination. (*Mendez v. Mid-Wilshire Health Care Center*

7  (2013) 220 Cal.App.4th 534, 541.)  "With respect to the moving party's burden to provide

8  evidence of the *existence* of an agreement to arbitrate, it is generally sufficient for that party to

9  present a copy of the contract to the court." (*Baker v. Italian Maple Holdings, LLC* (2017) 13

10  Cal.App.5th 1152, 1160.)

11       Defendants assert that Plaintiff executed an enforceable pre-dispute arbitration agreement

12  on February 1, 2014.  In support of this assertion, Defendants present the declaration of W. Alex

13  Koch, the Manager of Associate Relations for TJX, who oversees employee relations for

14  Marshalls – which is fully owned by TJX.  (Koch Decl. ¶ 2.)  Pursuant to Plaintiff's employment

15  records, Plaintiff was hired by Marshalls as an associate on June 27, 2013.  (Koch Decl. ¶¶ 3, 5-

16  6.)  In January 2014, TJX distributed a 12-page "Your Voice. Your Choice" associate packet to

17  all current employees and subsidiary employees including Marshalls employees.  (Koch Decl. ¶¶

18  7-8, Exh. A.)  "The Associate Packet attached three items: (i) an Associate Acknowledgement

19  Form; (ii) the Arbitration Agreement; and (iii) a pre-paid envelope to submit a signed Agreement

20  or a request to decline participation in the Agreement. The Associate Packet was distributed in

21  hardcopy form and could also be retrieved at the company's intranet website, myTJX.com."

22  (Koch Decl. ¶ 9.)  "On February 1, 2014, Plaintiff acknowledged receipt of the Associate Packet

23  containing the standalone Arbitration Agreement when he signed and dated the Associate

24  Acknowledgement Form." (Koch Decl. ¶ 10, Exh. B.)  "Following his receipt of the Arbitration

25  Agreement, Plaintiff had until March 12, 2014 to either sign the Agreement or decline to

1   participate in the Agreement by electronic or mail submission. The Arbitration Agreement

2   allowed Plaintiff to opt-out by either: (i) using the pre-paid envelope to mail a signed letter

3   declining participation; or (ii) logging onto myTJX.com to type his name at the bottom of the

4   Agreement declining participation. Plaintiff did not decline the Arbitration Agreement (either

5   electronically or by mail submission) by March 12, 2014, or any time thereafter, and continued

6   his employment with Marshalls for more than seven years past March 12, 2014." (Koch Decl. ¶

7   12.) "Marshalls' company records show that Plaintiff did not opt out of the Arbitration

8   Agreement. A message notifying Plaintiff of his election to not opt out was also posted for

9   Plaintiff on myTJX.com as of March 13, 2014." (Koch Decl. ¶ 13, Exh. D.)  The arbitration

10  agreement provides, in relevant part, that:

ARBITRATION AGREEMENT

11

12      This Arbitration Agreement is a legal contract and covers important issues relating
        to your rights. It is your sole responsibility to read it and understand it. You are free to
13      seek assistance from independent advisors of your choice outside the Company or to
        refrain from doing so. It is your choice.

14
        El acuerdo de resolución es un contrato legal y cubre aspectos importantes de tus
15      derechos. Es tu absoluta responsabilidad leerlo y entenderlo. Tienes la libertad de buscar
        asistencia de asesores independientes de tu elección fuera de la Empresa o de abstenerte d
16      buscar asistencia si esa es tu eleccion.

17      1. How This Agreement Applies

18      This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and
19      evidences a transaction involving commerce. Except as it otherwise provides, this
        Agreement applies to any dispute, past, present or future, arising out of or related to
20      Associate's employment with The TJX Companies, Inc. or one of its affiliates,
        successors, subsidiaries or parent companies (collectively, "TJX" or the "Company") or
21      termination of employment regardless of its date of accrual and survives after the
        employment relationship terminates. Nothing contained in this Agreement shall be
22      construed to prevent or excuse Associate (individually or in concert with others) or the
        Company from utilizing the Company's existing internal procedures for resolution of
23      complaints, and this Agreement is not intended to be a substitute for the utilization of
        such procedures.
24
        Except as it otherwise provides, this Agreement is intended to apply to the resolution of
25      disputes that otherwise would be resolved in a court of law or before a forum other than

1  arbitration. This Agreement requires all such disputes to be resolved only by an
Arbitrator through final and binding arbitration and not by way of court or jury trial.
2  Except as stated in paragraph 5 below, Associate and Company agree that any dispute or
controversy covered by this Agreement, or arising out of or relating to interpretation or
3  application of this Agreement, including the enforceability, revocability or validity of the
Agreement or any portion of the Agreement, shall be resolved by binding arbitration in
4  accordance with the Employment Arbitration Rules of the American Arbitration
Association ("AAA Rules") then in effect, and not by court or jury trial, to be held
5  (unless the parties agree in writing otherwise) within 45 miles of where Associate is or
was last employed by the Company. The AAA Rules may be found at www.adr.org or by
6  searching for "AAA Employment Arbitration Rules" using a service such as
www.Google.com or www.Bing.com or by contacting HR XPRESS (Tel. 888.627.6299)
7  for a copy of the rules. If there is a conflict between the AAA Rules and this Agreement,
this Agreement shall govern.
8

9  Except as it otherwise provides, this Agreement also applies, without limitation, to any
claims under federal, state, local or other applicable law based upon or related to
10  discrimination, harassment, retaliation, defamation (including claims of post-employment
defamation or retaliation), breach of a contract or covenant, fraud, negligence, emotional
11  distress, breach of fiduciary duty, trade secrets, unfair competition, wages or other
compensation, breaks and rest periods, termination, tort claims, equitable claims, and all
12  other statutory or common law claims unless explicitly excluded below. The Agreement
specifically covers, without limitation, all claims arising under the Uniform Trade Secrets
13  Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in
Employment Act, Equal Pay Act, Pregnancy Discrimination Act, Family Medical Leave
14  Act, Fair Labor Standards Act, Employee Polygraph Protection Act, Employee
Retirement Income Security Act (except for claims for employee benefits under any
15  benefit plan sponsored by the Company and (a) covered by the Employee Retirement
Income Security Act of 1974 or (b) funded by insurance), Affordable Care Act, Genetic
16  Information Non-Discrimination Act, including amendments to all the foregoing statutes,
and state and municipal statutes, if any, addressing the same or similar subject matters.
17

18  (Koch Decl., Exh. C.)

19      As Koch notes, the arbitration agreement was included in the Associate Packet, which

20  Plaintiff signed acknowledging that Plaintiff agreed.  (Koch Decl. ¶¶ 9-10, Exh. B.)  Moreover,

21  Plaintiff did not opt out.  (Koch Decl. ¶¶ 12-14, Exh. D.)

22      In opposition, Plaintiff does not dispute the existence of a binding arbitration agreement

23  but rather contends that the agreement is unconscionable and therefore unenforceable.

24

25  Applicability of the Federal Arbitration Act

1    "A party seeking to enforce an arbitration agreement has the burden of showing FAA

2    preemption." (*Lane v. Francis Capital Mgmt. LLC* (2014) 224 Cal.App.4th 676, 684.) California

3    law provides that parties may expressly designate that any arbitration proceeding should move

4    forward under the FAA's procedural provisions rather than under state procedural law.[1]  (*Cronus*

5    *Investments, Inc. v. Concierge Services* (2005) 35 Cal. 4th 376, 394).  Otherwise, the FAA

6    provides for enforcement of arbitration provisions in any "'contract *evidencing a transaction*

7    *involving* commerce.' (9 USC § 2.)"  (*Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995)

8    513 U.S. 265, 277.)  Accordingly, "[t]he party asserting the FAA bears the burden to show it

9    applies by presenting evidence establishing *the contract* with the arbitration provision has a

10   substantial relationship to interstate commerce[.]"  (*Carbajal v. CWPSC, Inc.* (2016) 245

11   Cal.App.4th 227, 234, [italics added].)  Moreover, as noted above, the California contract law

12   applies to the validity of the arbitration agreement.  (*Winter, supra,* 166 Cal.App.4th at p. 947.)

13        Here, the arbitration agreement expressly states that it is governed by the FAA.  (Koch

14   Decl., Exh. C, ["This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

15   and evidences a transaction involving commerce."].)  Accordingly, the FAA applies and will

16   preempt California law if in conflict.

17

18   Covered Claims

19        The arbitration agreement states in relevant part that:

20        Except as it otherwise provides, this Agreement also applies, without limitation, to any
21        claims under federal, state, local or other applicable law based upon or related to
          discrimination, harassment, retaliation, defamation (including claims of post-employment
22        defamation or retaliation), breach of a contract or covenant, fraud, negligence, emotional
          distress, breach of fiduciary duty, trade secrets, unfair competition, wages or other

23

24   _____
     [1] "But the parties may '*expressly* designate that any arbitration proceeding [may] move forward under the FAA's
     procedural provisions rather than under state procedural law.' [Citation.]  Absent such an express designation,
25   however, the FAA's procedural provisions do not apply in state court."  (*Valencia v. Smyth* (2010) 185 Cal.App.4th
     153, 174; see also *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1122.)

1

2

3

4

5

6

compensation, breaks and rest periods, termination, tort claims, equitable claims, and all other statutory or common law claims unless explicitly excluded below. The Agreement specifically covers, without limitation, all claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Equal Pay Act, Pregnancy Discrimination Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Polygraph Protection Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance), Affordable Care Act, Genetic Information Non-Discrimination Act, including amendments to all the foregoing statutes, and state and municipal statutes, if any, addressing the same or similar subject matters. (Koch Decl., Exh. C.)

7

8       The instant action includes claims for violations of FEHA, whistleblower retaliation,

9

labor code violations, and a claim for wrongful termination, which all arise from Plaintiff's

10

employment with Defendants and are expressly covered by the arbitration agreement.

11

Accordingly, Plaintiff's claims fall within the scope of the arbitration agreements.

12

13      Enforceability of agreement

14      "Once such a document is presented to the court, the burden shifts to the party opposing

15      the motion to compel, who may present any challenges to the enforcement of the agreement and

16      evidence in support of those challenges." (*Baker v. Italian Maple Holdings, LLC* (2017) 13

17      Cal.App.5th 1152, 1160.)

18      "California courts analyze unconscionability as having a procedural and a substantive

19      element." (*Kinney v. United Healthcare Services, Inc.* (1999) 70 Cal.App.4th 1329.) "[B]oth

20      elements must be present before a contract or contract provision is rendered unenforceable on

21      grounds of unconscionability." (*Id.*) The doctrine of unconscionability refers to "an absence of

22      meaningful choice on the part of one of the parties together with contract terms which are

23      unreasonably favorable to the other party." (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57

24      Cal.4th 1109, 1133.) It consists of procedural and substantive components, "the former focusing

25      on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-

1    sided results." (*Ibid.*) Although both components of unconscionability must be present to

2    invalidate an arbitration agreement, they need not be present in the same degree. (*Armendariz v.*

3    *Found Health Psychcare Servs., Inc.* (2000) 24 Cal.4th 83, 114.) "Essentially a sliding scale is

4    invoked which disregards the regularity of the procedural process of the contract formation, that

5    creates the terms, in proportion to the greater harshness or unreasonableness of the substantive

6    terms themselves. [Citations.] In other words, the more substantively unconscionable the contract

7    term, the less evidence of procedural unconscionability is required to come to the conclusion that

8    the term is unenforceable, and vice versa." (*Ibid.*) "The party resisting arbitration bears the

9    burden of proving unconscionability." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Dev.*

10   *(US), LLC* (2012) 55 Cal.4th 223, 247.)

11

12         *Procedural Unconscionability*

13         "Procedural unconscionability concerns the manner in which the contract was negotiated

14   and the circumstances of the parties at that time. It focuses on factors of oppression and

15   surprise." (*Id.*) "Surprise differs from oppression. Surprise is when a prolix printed form

16   conceals the arbitration provision. [Citation.] Oppression, on the other hand, occurs when there is

17   a lack of negotiation and meaningful choice. [Citation.] The presence of surprise or oppression

18   requires higher scrutiny of the contract." (*Torrecillas v. Fitness International, LLC* (2020) 52

19   Cal.App.5th 485, 493.)

20         Plaintiff contends that the arbitration agreement is procedurally unconscionable because

21   the arbitration agreement was a contract of adhesion.

22         "Adhesion contracts are form contracts a party with superior bargaining power offers on

23   a take-it-or-leave-it basis." (*Torrecillas, supra,* 52 Cal.App.5th at p.493.) "Whether the

24   agreement was or was not a contract of adhesion is not the core question. Rather, from the

25   standpoint of determining whether there was procedural unconscionability, the core issues are

10
13

surprise and oppression." (*Ibid.*)  In the absence of "surprise or other sharp practices", Courts do not recognize that "adhesive" arbitration agreements establish a high degree of procedural unconscionability. (*Baltazar v. Forever 21 Inc.* (2016) 62 Cal.4th 1237, 1246.)

Here, Plaintiff states in memorandum that "[Plaintiff] never signed the Arbitration Agreement as evidence by Exhibit C. [Plaintiff] never negotiated the agreement presented in Exhibit C as Defendants do not present any evidence of negotiations. Therefore, the agreement is procedurally unconscionable." (Opp. at p.6:17-20.)  However, no evidence is presented in support of these contentions.

As to the first contention, Plaintiff signed the acknowledgement of the Associate Packet which contained the arbitration agreement. (Koch Decl. ¶¶ 9-10, Exh. B.)  The arbitration agreement expressly provides that "[s]hould an Associate neither accept nor decline to participate in this Agreement by March 12, 2014, continuing the Associate's employment constitutes mutual acceptance of the terms of this Agreement and the Company." (Koch Decl., Exh. C.)  "California law in this area is settled: when an employee continues his or her employment after notification that an agreement to arbitration is a condition of continued employment, that employee has impliedly consented to the arbitration agreement." (*Diaz v. Sohnen Enterprises* (2019) 34 Cal.App.5th 126, 130.)  Therefore, it is clear that there is an enforceable arbitration agreement – absent a finding of unconscionability – between Plaintiff and Defendants.  Moreover, Plaintiff does not dispute the existence of the arbitration agreement.  Thus, the lack of Plaintiff's signature on the arbitration agreement itself is irrelevant.

As to the second contention, it is not Defendants' burden to show evidence of negotiations.  Rather, this burden is on Plaintiff to show a lack of such. (See *Baker, supra,* 13 Cal.App.5th at p.1160.)  Moreover, given that Plaintiff was expressly advised that he had an opportunity to opt out from participation in the arbitration agreement, (Koch Decl. ¶ 12), the Court is hard-pressed to find that the agreement is one of adhesion.  Per the terms of the

14

1    arbitration agreement itself, Plaintiff could opt out. (Koch Decl., Exh. C.)  Unlike a typical

2    adhesion contract, Plaintiff was not forced to accept this arbitration agreement as a condition of

3    employment.

4        Moreover, even if the Court were to disregard the evidence that Plaintiff was free to opt

5    out of the arbitration agreement (which the Court declines to ignore), the fact that an arbitration

6    agreement may have been presented on a take it or leave it basis or that there may have been

7    unequal bargaining power only establishes at most a modest degree of procedural

8    unconscionability.  (*Torrecillas, supra,* 52 Cal.App.5th at p.493; *Baltazar v. Forever 21 Inc.,*

9    *supra,* 62 Cal.4th at p.1246.)  Moreover, Plaintiff fails to point to any section of the arbitration

10   agreement that was a "surprise."  The agreement specified at the top in a separate outlined box

11   that it was an arbitration provision, and it was written in standard font size.

12       In sum, given the lack of evidence of procedural unconscionability, the Court finds that

13   Plaintiff has failed to demonstrated any procedural unconscionability whatsoever.  Here, even if

14   the Court were to find a high degree of procedural unconscionability (which the Court does not

15   do), such a finding would not affect the outcome of this motion because Plaintiff fails to show

16   any substantive unconscionability at all.  "[A] finding of procedural unconscionability does not

17   mean that a contract will not be enforced, but rather that courts will scrutinize the substantive

18   terms of the contract to ensure they are not manifestly unfair or one-sided."  (*Sanchez v. Valencia*

19   *Holding Co., LLC* (2015) 61 Cal.4th 899, 915.)

20

21       *Substantive Unconscionability*

22       "Substantive unconscionability" focuses on the terms of the agreement and whether those

23   terms are "so one-sided as to 'shock the conscience.'"  (*Kinney,* 70 Cal.App.4th at p.1330.)

24   "Where a party seeks to arbitrate nonwaivable statutory civil rights in the workplace, such as the

25   FEHA claims and wrongful termination claim that are involved here, there are five minimum

1   requirements for the lawful arbitration of such rights pursuant to a mandatory employment

2   arbitration agreement. Such an arbitration agreement is lawful if it "(1) provides for neutral

3   arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4)

4   provides for all of the types of relief that would otherwise be available in court, and (5) does not

5   require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a

6   condition of access to the arbitration forum. Thus, an employee who is made to use arbitration as

7   a condition of employment 'effectively may vindicate [his or her] statutory cause of action in the

8   arbitral forum.' [Citation.]" (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000)

9   24 Cal. 4th 83, 102.)

10          Plaintiff contends that the agreement is substantively unconscionable because it limits

11  discovery.

12

13      **Adequate Discovery**

14          Plaintiff contends that the agreement is unconscionable because Plaintiff intends to issue

15  subpoenas to depose and obtain documents from third parties, but "Because Defendants'

16  Arbitration Agreement is pursuant to the FAA, the *Aixtron* action specifically held that the

17  parties cannot obtain third-party discovery during discovery in Arbitration. This means that if

18  this Court orders the Parties to Arbitration, the Parties cannot ask the arbitrator to issue

19  prehearing subpoenas." (Opp. at p.8:4-7.) Plaintiff argues that the arbitration agreement

20  here is substantively unconscionable because under *Aixtron*, any subpoenas issued for

21  third-party discovery will not be enforceable. (Martirosyan Decl. ¶¶ 5-6.)

22          Notably, Plaintiff fails to identify by name a single co-worker or customer who

23  allegedly witnessed Defendants' retaliatory treatment of Plaintiff after Plaintiff

24  complained to Defendants of health and safety violations.

25

1    Putting aside for a moment Plaintiff's failure to articulate precisely what third-

2  party discovery is necessary for Plaintiff to pursue his claims in the instant action,

3  Plaintiff appears to be correct that under *Aixtron*, an arbitrator's authority to enforce pre-

4  hearing subpoenas may be limited.

5    In *CVS Health Corporation v. Vividus, LLC* (9th Cir. 2017) 878 F.3d 703, the

6  Ninth Circuit concluded that "section 7 of the FAA gives arbitrators two powers: (1) to

7  compel the attendance of persons to appear as witnesses at the hearing and (2) to compel

8  such persons to bring relevant documents to the hearing." (*Aixtron, Inc., supra,* 52

9  Cal.App.5th at p.394, [Citing *CVS Health Corporation*].)  If a person summoned as a

10  witness does not comply, the statute gives the district court in the district in which the

11  arbitrator sits the power to compel the person's attendance before the arbitrator.

12  [Citation]." (Id. at p.706.)  The Ninth Circuit concluded that "[a] plain reading of the text

13  of section 7 reveals that an arbitrator's power to compel the production of documents is

14  limited to production at an arbitration hearing. The phrase 'bring with them,' referring to

15  documents or other information, is used in conjunction with language granting an

16  arbitrator the power to 'summon ... any person to attend before them.' [Citation.] Under

17  this framework, any document productions ordered against third parties can happen only

18  'before' the arbitrator. The text of section 7 grants an arbitrator no freestanding power to

19  order third parties to produce documents other than in the context of a hearing." (Ibid.)

20  Accordingly, the Ninth Circuit concluded that the FAA did not give the arbitrators

21  authority to issue a prehearing subpoena. (Id. at p.708.)

22    In *Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, a third party

23  similarly objected to and refused to comply with a subpoena issued by an arbitrator. (*Id.*

24  at pp.369-370.)  The trial court granted a petition to compel document production under

25  the subpoena.  Embracing the rule under *CVS Health* that an arbitrator lacks authority

14
17

1  under the FAA to compel third-parties to produce documents other than in the context of

2  an arbitration hearing, the Court of Appeal reversed.  The Court of Appeal further

3  concluded that the specific arbitration agreement under the CAA did not grant the

4  arbitrator authority to issue a prehearing subpoena.  (*Id.* at pp.371-405.)

5        Thus, Plaintiff appears to be correct that the FAA does not grant arbitrators the

6  power to order discovery from nonparties prior to a hearing.  As noted above, the

7  agreement here is governed by the FAA.  (Koch Decl., Exh. C, ["This Agreement is

8  governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction

9  involving commerce."].)  Accordingly, pre-arbitration hearing discovery to third parties

10 may be limited.

11       Nonetheless, "limiting discovery is one point of arbitration. A central goal is

12 efficiency. A streamlined discovery process promotes this goal." (*Torrecillas, supra,* 52

13 Cal.App.5th at p.497.)  Moreover, Plaintiff fails to identify any limitation on discovery

14 uniquely imposed by the arbitration agreement at issue.  "Substantive unconscionability"

15 focuses on *the terms of the agreement* and whether those terms are "so one-sided as to 'shock the

16 conscience.'" (*Kinney*, 70 Cal.App.4th at p.1330, [italics added].)  Here, Plaintiff fails to

17 identify a single term of the arbitration agreement that limits third-party discovery.  To the

18 contrary, the arbitration agreement expressly provides that "[a]t a party's request or on the

19 Arbitrator's own initiative, the Arbitrator may subpoena witnesses or documents for discovery

20 purposes or for the arbitration hearing." (Koch Decl., Exh. C.)  Thus, any limitation on Plaintiffs

21 ability to obtain third party discovery does not stem from the arbitration agreement.  Instead, the

22 limitation on the enforceability of pre-hearing subpoenas is imposed by statute – namely, section

23 7 of the FAA. (*Aixtron, Inc., supra,* 52 Cal.App.5th at pp.394-395.)  Thus, Plaintiff is not

24 asserting that the *arbitration agreement* in particular is unconscionable or one-sided.  Instead,

25 Plaintiff is objecting to all *arbitrations governed by the FAA (including* section 7 of the FAA.

18

1  However, Plaintiff fails to cite to any authority suggesting that all arbitration agreements

2  governed by the FAA, including section 7 of the FAA, are substantively unconscionable

3  based on the arbitrator's inability to compel third parties to comply with pre-arbitration

4  hearing discovery.

5      Therefore, Plaintiff fails to show that the arbitration agreement is substantively

6  unconscionable.

7

8  **CONCLUSION AND ORDER**

9      Based on the foregoing, Defendants Marshalls of CA, LLC, The TJX Companies, Inc.,

10  and Delmy Hernandez's motion to compel arbitration is GRANTED.

11      The case is stayed in its entirety for all purposes pending arbitration pursuant to Code of

12  Civil Procedure section 1281.4.  A status conference regarding the progress of arbitration and the

13  stay is set for June 1, 2023 at 8:30 am.

14      The Court's Judicial Assistant is to give notice to all parties.

15

16  DATED:  January 30, 2023                    _____

17                                             Elaine Lu
                                               Judge of the Superior Court

18

19

20

21

22

23

24

25

16
19

# EXHIBIT 3

UNITED STATES DISTRICT COURT          **STAYED**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 21-6649-DMG (MARx) | Date | February 3, 2022 |
|---|---|---|---|

| Title | *Reja Spaeny v. The TJX Companies, Inc., et al.* | Page | 1 of 4 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:  IN CHAMBERS—ORDER RE DEFENDANT'S MOTION TO COMPEL ARBITRATION [20]**

On July 7, 2021, Plaintiff Reja Spaeny filed a Complaint in Los Angeles County Superior Court against Defendants The TJX Companies, Inc. and HomeGoods, Inc., alleging various employment discrimination and wrongful termination claims. [Doc. # 1-1.]  On August 17, 2021, Defendants removed the action, asserting diversity jurisdiction pursuant to 28 U.S.C. section 1332. [Doc. # 1.]

Now before the Court is Defendants' motion to compel ("MTC") Plaintiff to submit her claims to arbitration and to stay this action.  [Doc. # 20.]  The MTC is fully briefed.  [Doc. ## 23, 24].  Having considered the parties' written submissions, the Court **GRANTS** Defendants' MTC.

**I.**

**FACTUAL BACKGROUND**

On February 6, 2018, Plaintiff submitted an application for employment at Defendants' HomeGoods retail store in Tarzana, California.  Koch Decl. ¶ 9 [Doc. # 20-2].  Plaintiff was hired and started her employment on February 11, 2018.  *Id.* at ¶ 9.  According to W. Alex Koch, Defendants' Manager of Associate Relations, all new employees are given an onboarding packet on their first day of work, which includes:  (1) an "Arbitration Agreement," which is for the employee to keep, and (2) two-copies of an "Acknowledgment Form," one for the employee to keep and one to sign and return.  *Id.* at ¶ 7.  The Arbitration Agreement states that certain disputes between the company and employee—including those "based upon or related to discrimination, harassment, [or] retaliation"—"shall be resolved by binding arbitration in accordance with the Employment Arbitration Rules of the American Arbitration Association ("AAA Rules") then in effect, and not by court or jury trial."  *Id.*, Ex. A (Arbitration Agreement) § 1.  The Arbitration Agreement further states that "[t]he AAA Rules may be found at www.adr.org or by searching for 'AAA Employment Arbitration Rules' using a service such as www.Google.com or www.Bing.com or by contacting HR XPRESS (Tel. 888.627.6299) for a copy of the rules."  *Id.*

---

**APPENDIX 37**

UNITED STATES DISTRICT COURT                    **STAYED**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-6649-DMG (MARx)** | Date | February 3, 2022 |
|---|---|---|---|

| Title | *Reja Spaeny v. The TJX Companies, Inc., et al.* | Page | 2 of 4 |
|---|---|---|---|

  The Arbitration Agreements also provides that "[p]articipation in this Agreement is not a mandatory condition of Associate's employment at the Company, and therefore an Associate may, no later than 45 days from the Associate's date of hire, decline participation in this Agreement." *Id.* at § 8. The Acknowledgment Form binds employees to the Agreement "unless [they] decline to participate, as described in paragraph 8 of the Agreement, within 45 days from [their] date of hire." Koch Decl., Ex. B.

  Koch attaches to his declaration a copy of the Acknowledgment Form that appears to be signed by Plaintiff, along with her handwritten printed name and the date, February 11, 2018. *Id.* He attests that he is familiar with and has access to Defendants' personnel records, and that he has reviewed the employment records for Plaintiff. Koch Decl. ¶¶ 2-3.

  For her part, Plaintiff attests that she never received any sort of arbitration agreement or policy, nor did she ever sign such a document or otherwise voluntarily agree to arbitrate any claims. Spaeny Decl. ¶¶ 6-7 [Doc. # 23-1]. She claims that while working for Defendants, she "noticed that the managerial staff at the location where I worked had poor records management practices," and that "[o]ften times, required documents would not be given to employees in a timely manner or at all." *Id.* at ¶ 4. Plaintiff maintains that, prior to visits from corporate officers, she "personally witnessed managers forge employees' signatures on documents . . . so as to make it seem as if everything was in order." *Id.* at ¶ 5.

**II.**
**LEGAL STANDARD**

  The Federal Arbitration Act ("FAA") provides that written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011). "The basic role for courts under the FAA is to determine '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (*en banc*) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

  Federal substantive law governs questions concerning the interpretation and enforceability of arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22–24 (1983). Courts apply ordinary state law contract principles, however, "[w]hen deciding whether the parties agreed to arbitrate a certain matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). As long as an arbitration clause is not itself invalid under "generally applicable contract defenses, such as fraud, duress, or unconscionability," it must be enforced according to its terms. *Concepcion*, 563 U.S. at 339. Under California law, "[t]he trial court sits as the trier of fact, weighing all the affidavits, declarations, and other documentary evidence . . . to reach a final

---

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk <u>KT</u> |
|---|---|---|

**APPENDIX 38**

UNITED STATES DISTRICT COURT          **STAYED**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 21-6649-DMG (MARx) | | Date | February 3, 2022 |
|---|---|---|---|---|

| Title | *Reja Spaeny v. The TJX Companies, Inc., et al.* | | Page | 3 of 4 |
|---|---|---|---|---|

determination." *Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal. App. 4th 836, 842 (2014) (citing *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972 (1997), *as modified* (July 30, 1997)).

### III.
### DISCUSSION

Plaintiff primarily opposes the MTC based on her contention that she never signed the Acknowledgment Form or received the Arbitration Agreement, notwithstanding Defendants' production of a form that appears to be to the contrary. The Court is thus tasked with resolving this factual and evidentiary dispute.

First, Plaintiff objects to the signed Acknowledgment Form provided by Koch because he was not the person who provided the form to her and who witnessed her sign it. Koch is Defendants' HR manager with personal knowledge of the types of personnel documents required for employment and Defendants' record-keeping practices, which is sufficient to authenticate the Form. *See* Fed. R. Evid. 901(b)(1); *see also Beckman v. Zuffa LLC*, No. CV 21-5570-MWF (AGRx), 2021 WL 5445464, at *3 (C.D. Cal. Nov. 15, 2021) ("Plaintiff argues that the only way a defendant could meet its burden would be with a declaration from a witness to the employee's signature. That burden is unsupported by either case law or the routine practice in both district court and superior court."). The objection is **OVERRULED**.

Second, Defendants object to Plaintiff's statements that management at her store "had poor records management practices" and would forge employee personnel records as lacking foundation and constituting inadmissible habit evidence. Plaintiff attests that she "personally witnessed" these forgeries, so she does provide foundation, and evidence of an organization's routine practices may be admitted to show that on a particular occasion the organization acted in accordance with that practice. *See* Fed. R. Evid. 406. The objections are therefore **OVERRULED**. That Plaintiff's testimony is admissible, however, does not mean that it is entitled to much weight or credibility.

Plaintiff does not attest that she witnessed *her* records being forged, nor does she explain in any detail who specifically committed forgery, when, how often, or how she would have witnessed such conduct. She does not describe any specific examples of forgery or offer the testimony of any corroborating witness. Defendants counter her rather bold assertions of forgery by offering other documents that she signed—including her employment application, which necessarily would have been signed before Defendants took possession of it and therefore could not have been forged—along with the testimony of a handwriting expert who opines that the

---

**APPENDIX 39**

UNITED STATES DISTRICT COURT          **STAYED**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-6649-DMG (MARx)** | | Date | February 3, 2022 |
|----------|---------------------------|-|------|------------------|

| Title | *Reja Spaeny v. The TJX Companies, Inc., et al.* | | Page | 4 of 4 |
|-------|--------------------------------------------------|-|------|--------|

signatures are a match.  Mahoney Decl. ¶¶ 12-18 [Doc. # 24-2].[1]  Viewing the signatures as a lay factfinder, the Court also perceives them to be a match.  The Court therefore finds that Defendants have met their burden of establishing that Plaintiff signed the Acknowledgment Form and thus agreed to the Arbitration Agreement.  The Court does not credit Plaintiff's assertion that she never signed the Form or her suggestion that her signature was forged.

Plaintiff also argues that the Arbitration Agreement is unconscionable.  In California, "a contract must be both procedurally and substantively unconscionable to be rendered invalid." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013).  Procedural unconscionability measures "oppression or surprise due to unequal bargaining power," while substantive unconscionability focuses on "overly harsh or one-sided results."  *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1133 (2013).  Plaintiff's only theory of unconscionability that is independent from her claim that she never signed the Agreement is that Defendants never provided a copy of the arbitration rules to which the parties would be bound.  But the Agreement clearly references the AAA rules and how to obtain them online.  Courts have held this is sufficient.  *Lane v. Francis Cap. Mgmt. LLC*, 224 Cal. App. 4th 676, 691 (2014) ("[W]e conclude the failure to attach a copy of the AAA rules did not render the agreement procedurally unconscionable. There could be no surprise, as the arbitration rules referenced in the agreement were easily accessible to the parties—the AAA rules are available on the Internet.").  Plaintiff has therefore not established unconscionability.

**IV.**
**CONCLUSION**

In light of the foregoing, the Court **GRANTS** Defendants' MTC.  The Court **STAYS** this action pending the completion of arbitration.  The parties shall file a status report or stipulation of dismissal following the resolution of arbitration proceedings.  All scheduled dated and deadlines are **VACATED**.

**IT IS SO ORDERED.**

---

[1] It is also worth noting that Plaintiff did not sign her own declaration with a wet signature, notwithstanding the Local Rule requiring hand-signed signatures for the declarations of those who are not registered CM/ECF filers. *See* C.D. Cal. L.R. 5-4.3.4(a)(3).  Failure to comply with the Rule could be reason enough to strike the declaration in its entirety.

**APPENDIX 40**

# EXHIBIT 4

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF VENTURA
VENTURA**

**MINUTE ORDER**

DATE: 11/03/2021               TIME: 08:20:00 AM        DEPT:  41

JUDICIAL OFFICER PRESIDING: Ronda McKaig
CLERK:  Kim Goodman
REPORTER/ERM: None

CASE NO: **56-2021-00556509-CU-OE-VTA**
CASE TITLE: **Johnson vs. Marshalls of CA LLC**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Other employment

---

**EVENT TYPE**: Motion - Other (CLM) Notice of Petition to Compel Arbitration and Stay Case
MOVING PARTY: Marshalls  of MA Inc, Marshalls of CA LLC
CAUSAL DOCUMENT/DATE FILED: Motion - Other Notice of Petition to Compel Arbitration and Stay
Case, 09/30/2021

---

**APPEARANCES**
No Appearance by all parties

At 8:46 a.m., court convenes in this matter.

Parties submitted on the tentative ruling by email to the Court prior to the hearing.

The Court finds/orders:

The Court's tentative is adopted as the Court's ruling.

RE: Defendant Marshalls of CA LLC's Motion to Compel Arbitration of Complaint of Plaintiff Amy
Johnson and Request for Stay of Case

The Court GRANTS Defendant's motion to compel arbitration. Plaintiff contends that she does not
remember receiving information about arbitration.  The Court finds that Plaintiff was provided information
about the arbitration and the ability to opt out and the consequences of failing to opt out.  Plaintiff does
not deny receiving the packet or having the time to read it and access information at home.  There is no
requirement that she be provided time at work to review the agreement.  Plaintiff signed the
acknowledgment of receiving the packet which in turn acknowledged the opt out provision. (*Gentry v.
Superior Court* (2007) 42 Cal.4th 443, 468.)

Plaintiff contends the arbitration agreement is unconscionable.  The agreement and AAA rules are not
unconscionable insofar as the rules provide for a neutral arbitrator and there is no predetermined limit on
discovery.  The parties can agree to participate in discovery and discovery issues go to the arbitrator
only if there is a dispute.

Plaintiff claims the arbitration clause violates Labor Code § 432.6.  Plaintiff agreed to the arbitration in
2014.  Labor Code § 432.6 only applies to contracts for employment entered into, modified, or extended
on or after January 1, 2020.  (Lab. Code § 432.6 (h).)

The parties are ordered to arbitrate all claims and defenses thereto.  The case is stayed pending the
completion of arbitration.  The parties are ordered to notify this Court within 10 business days of the

---

CASE TITLE: Johnson vs. Marshalls of CA LLC          CASE NO: **56-2021-00556509-CU-OE-VTA**

completion of arbitration and to advise whether a dismissal will be filed or whether further action is required of the Court.

Notice to be given by the clerk.

APPENDIX 43

# EXHIBIT 5

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 07/31/2019        TIME: 01:30:00 PM        DEPT: C20

JUDICIAL OFFICER PRESIDING: Charles Margines
CLERK: Eric Yu
REPORTER/ERM:
BAILIFF/COURT ATTENDANT: Johanna Prado

CASE NO: **30-2019-01051482-CU-WT-CJC** CASE INIT.DATE: 02/13/2019
CASE TITLE: **Dillon vs. D'entremont**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Wrongful Termination

---

EVENT ID/DOCUMENT ID: 73062028
**EVENT TYPE**: Motion to Compel Arbitration
MOVING PARTY: Bonnie D'entremont, TJ MAXX of CA, LLC
CAUSAL DOCUMENT/DATE FILED: Motion to Compel Arbitration, 06/04/2019

---

**APPEARANCES**

---

Tentative Ruling posted on the Internet .

Prior to calendar call:

Both parties submit on the Court's tentative ruling.

There are no appearances by any party.

The Court confirms the tentative ruling as follows:

The court rules as follows on Defendants T.J. Maxx of CA, LLC and Bonnie d'Entremont's petition to compel arbitration and stay case –

Facts/Overview:

This is an employment action based upon claims of racial discrimination and wage and hours violations.

Plaintiff has been employed by third party AKWright, which was merged into Defendant TJ Maxx of CA, LLC, for 14 years, rising to the level of assistant manager. In July of 2017, Defendant Bonnie d'Entremont took over as manager of the TJ Maxx store in which Plaintiff worked. Plaintiff alleges that there was an effort by management to "whitewash" the store, with employees being instructed to not converse in Spanish. Plaintiff attempted to bring this to the attention of TJ Maxx's Human Resources Department, but there was no response and no investigation.

After requesting a brief amount of time off to recover from surgery, Plaintiff's employment was

---

CASE TITLE: Dillon vs. D'entremont                    CASE NO: **30-2019-01051482-CU-WT-CJC**

terminated on 9/14/18.

Plaintiff filed her complaint on 2/13/19 Against Defendants TJ Maxx of CA, LLC and Bonnie d'Entremont, alleging causes of action for: (1) Racial Discrimination (FEHA); (2) Retaliation (FEHA); (3) Interference in Violation of the CRFA; (4) Wrongful Termination; (5) Unfair Competition; (6) Failure to Provide Rest Breaks; (7) Failure to Pay Wages; (8) Inaccurate Pay Statements; and (9) Battery.

Defendants answered the complaint on 3/22/19 and 4/29/19. The case is set for trial on 6/8/20.

<u>Moving Parties contend as follows</u>:

On August 30, 2004, T.J. Maxx hired Plaintiff as an Assistant Store Manager at T.J. Maxx's Fountain Valley location. During Plaintiffs employment, T.J. Maxx also employed Defendant Bonnie d'Entremont, who was the store manager at that store. In January 2014, The TJX Companies, Inc. distributed a 12-page "Your Voice. Your Choice." Associate Packet ("Associate" is the term by which Defendant TJ Maxx refers to its store-level employees) to all current employees, including all T.J. Maxx employees, which included the rollout of an arbitration agreement. On January 23, 2014, Plaintiff acknowledged receipt of the Associate Packet containing the standalone Arbitration Agreement when she signed and dated the Associate Acknowledgement Form. The Arbitration Agreement restates the instructions for opting out and that the failure to do so by March 12, 2014, and continuing to work thereafter, constitutes mutual acceptance of the Agreement. Plaintiff failed to opt out.

The FAA, codified at 9 U.S.C. § 1 et seq., provides that a party to an arbitration agreement may, upon refusal of the other party to arbitrate a dispute arising under the agreement, move to compel arbitration. 9 U.S.C. § 2. The FAA makes agreements to arbitrate, "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA generally applies to arbitration agreements between employers and employees engaged in commerce. *Basura v. US. Home Corp.* (2002) 98 Cal. App. 4th 1205, 1214; see also *Perry v. Thomas* (1987) 482 U.S. 483,491; *Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 119-22. 21 Under the FAA, the court merely "determin[es] (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue," and "if the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.* (9th Cir. 2000) 207 F.3d 1126, 1130; *Cox v. Ocean View Hotel Corp.* (9th Cir. 2008) 533 F.3d 1114, 1119.

State law rules hostile to arbitration agreements are preempted by the FAA. *AT&T Mobility LLC v. Concepcion* (2011) 563 US. 333, 341. Any doubt concerning the scope of arbitration must be resolved in favor of arbitration. See *United Transp. Union v. Southern Cal. Rapid Transit Dist.* (1992) 7 Cal.App.4th 804, 808-09. By failing to opt out within the required period of time and continuing her employment with T.J. Maxx, Plaintiff agreed to be bound by the terms of the Arbitration Agreement, including the requirement that her claims be submitted to binding arbitration.

Plaintiff's claims are within the scope of the Arbitration Agreement. The Arbitration Agreement provides that it applies to "any dispute, past, present or future, arising out of or related to Associate's employment ... or termination of employment," including "without limitation, to any claims under federal, state, local or other applicable law based upon or related to discrimination, harassment, retaliation, ... emotional distress, ... wages or other compensation, breaks and rest periods, termination, [and] tort claims."

A valid arbitration agreement must not be unconscionable. To find an agreement substantively

---

DATE: 07/31/2019                    MINUTE ORDER                    Page 2
DEPT: C20                                30                      Calendar No.

APPENDIX 46

CASE TITLE: Dillon vs. D'entremont                CASE NO: **30-2019-01051482-CU-WT-CJC**

---

unconscionable, the terms of the agreement must be "so one-sided as to shock the conscience." *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071. Here, the Arbitration Agreement provides the Parties with mutual and equal rights. The Arbitration Agreement rules are mutually binding on both Defendants and Plaintiff, and both are obligated to submit all enumerated disputes to arbitration. Likewise, Defendants and Plaintiff are bound by the same deadlines, entitled to the same discovery, and the arbitrator must be selected jointly. Thus, the Arbitration Agreement is not substantively unconscionable.

Even if the Arbitration Agreement were substantively unconscionable, it is not procedurally unconscionable and therefore is enforceable. To determine whether an arbitration agreement is procedurally unconscionable, courts look to whether it is unreasonably oppressive or surprising. *Kinney v. United Healthcare Servs., Inc.* (1999) 70 Cal.App.4th 1322, 1329 ..."). Here, there is no indication that Plaintiff was subjected to oppressive tactics to force her to enter into the Arbitration Agreement.

Likewise, Plaintiff cannot profess a plausible claim of "surprise," as she was given the opportunity to opt-out of the Arbitration Agreement. In *Kilgore*, the Ninth Circuit upheld an arbitration agreement against a challenge based on unconscionability grounds where the agreement contained an "opt-out provision and a conspicuous and comprehensive explanation of the arbitration agreement [and] Plaintiffs did not reject that agreement." *Kilgore*, 673 F.3d at 964; see also *Circuit City Stores, Inc. v. Ahmed* (9th Cir. 2002) 283 F.3d 1198, 1199-2000.

The Arbitration Agreement bears other similarities to the agreement upheld in *Ahmed*. Specifically, the Agreement: (1) is located in a separately titled section of the overall document package; (2) includes bold cautionary [emboldened] language set off from the rest of the document; (3) instructs the Associates to read through the Agreement before signing it; (4) encourages Associates to consult with an independent advisor before signing; and (5) the terms are additionally spelled out in written materials and a video presentation. See *Ahmed*, 283 F.3d at 1199-1200.

The Arbitration Agreement is also enforceable under California law because it includes basic procedural and remedial protections such that a claimant may effectively pursue statutory rights. See *Armendariz*, 24 Cal. 4th at 96-97. The Arbitration Agreement satisfies the minimum requirements for "essential fairness" enumerated in *Armendariz*. The agreement incorporates the AAA rules, requires use of a neutral arbitrator, provides for adequate discovery, proves for a written award, Plaintiff is not required to pay unreasonable costs of arbitrator's fees, and all relief is allowed.

Nonsignatories to arbitration agreements are entitled to compel arbitration under third-party beneficiary, agency, and estoppel theories. *Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co.* (2005) 129 Cal.App.4th 759, 766. In her Complaint, Plaintiff alleges that d'Entremont was "the Store Manager with immediate supervisory authority over [Plaintiff]" and acted toward Plaintiff "in her capacity as a supervisor and agent for T.J. Maxx." Plaintiff also alleges that d'Entremont terminated Plaintiff's employment. Thus, Plaintiff's own allegations establish d'Entremont's ability to enforce the Arbitration Agreement. See *Norcal Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 75. The case should be stayed pending the outcome of arbitration.

<u>Responding Party contends as follows</u>:

California courts should invalidate arbitration agreements when they contain provisions that are "unconscionable or contrary to public policy." Civ. Code §1670.5(a); *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 99. Unconscionability exists when one party lacks meaningful choice in entering a contract or negotiating its terms and the terms are unreasonably

---

DATE: 07/31/2019                    MINUTE ORDER                              Page 3
DEPT: C20                                  31                            Calendar No.

CASE TITLE: Dillon vs. D'entremont                    CASE NO: **30-2019-01051482-CU-WT-CJC**

favorable to the other party. *A & M Produce Co. v. FMC Corp.*, 135 Cal. App.3d 473, 486. The doctrine of unconscionability includes both a procedural and a substantive element. *Armendariz*, 24 Cal.4th 83, 114.

The opt-out procedure is confusing and procedurally unconscionable. Here, the agreement is even more procedurally unconscionable because the instructions for accepting and declining the agreement to arbitrate are confusing and at odds with a reasonable employee's expectations. The arbitration agreement states that an employee may agree to participate by submitting a form or making an online election, decline participation the same way, or do nothing. Doing nothing, however, does not mean what it should – that nothing happens. Instead, doing nothing means the employee is automatically bound. "An offeror has no power to cause the silence of the offeree to operate as an acceptance when the offeree does not intend it to do so." *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 468.

In addition to a confusing opt-out procedure, the way the Arbitration Agreement describes arbitration contributes to the procedural unconscionability. For example, the "Your Voice. Your Choice." Packet includes pages of information purporting to explain arbitration and its benefits. All of the information is a glowing review of the process. According to TJ Maxx, there is no reason an employee would not want to arbitrate every claim. For example, the waiver on class and representative actions is mentioned but not with a description of what that means in practice. The "Your Voice. Your Choice" packet does not explain the decision to arbitrate in a way that would encourage an employee to inquire further or read the fine print.

TJ Maxx's Arbitration Agreement requires that "neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties." California and the Ninth Circuit agree that these confidentiality provisions are unconscionably one-sided. *Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1066; *Davis v. O'Melveny & Meyers* (9th Cir. 2007) 485 F.3d 1066, 1078. Furthermore, the confidentiality requirement survives the arbitration indefinitely.

Similar to the arbitration agreement in *Ramos*, TJ Maxx's Arbitration Agreement requires Ms. Dillon to keep all aspects of the arbitration secret, making her attempt to informally contact or interview any witness a violation of the arbitration agreement. *Ramos*, 28 Cal.App.5th at 1066. As in *Ramos*, this clause would increase Ms. Dillon's costs by replacing informal discovery with depositions and subpoenas, thus defeating the purpose of using arbitration as a "simpler, more time effective forum for resolving disputes." Id. Lastly, similar to the savings clause in *Davis*, TJ Maxx's "except as may be permitted or required by law" language is contrary to public policy and cannot permit TJ Maxx to resuscitate its legally defective confidentiality provision. *Davis* 485 F.3d at 1079. In *Davis*, the Ninth Circuit rejected the employer's attempt to invoke a savings clause much like the one here. The Court declined to permit the employer to completely negate the meaning of the confidentiality clause it wrote because it contradicted "applicable law." *Id.*

"Both the United States Supreme Court and California courts agree that, in order for a delegation clause to be enforceable, it must be clear and unmistakable." *Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1560, citing *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944–945; *Chin v. Advanced Fresh Concepts Franchise Corp.* (2011) 194 Cal.App.4th 704, 709. Here, the delegation clause states that "[E]xcept as stated in paragraph 5 below, . . . any dispute or controversy covered by this Agreement, or arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement, shall be resolved by binding arbitration…" The delegation of authority in the Arbitration Agreement is not "clear

DATE: 07/31/2019                    MINUTE ORDER                    Page 4
DEPT: C20                              32                          Calendar No.

APPENDIX 48

CASE TITLE: Dillon vs. D'entremont                    CASE NO: **30-2019-01051482-CU-WT-CJC**

and unmistakable."

TJ Maxx's Arbitration Agreement purports to waive the right to bring class, collective, or "private attorney general representative action[s]." As with other unconscionable provisions in the Agreement, TJ Maxx includes a savings clause purporting to authorize severing this waiver from the larger agreement. [Id.] Under California law, this provision is unconscionable and against public policy. *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 383; *In re Marriage of Fell* (1997) 55 Cal. App.4th 1058, 1065.

Ms. Dillon was never presented with an arbitration agreement with Ms. d'Entremont, the supervisor who discriminated against her. Instead, her agreement was only with TJ Maxx. The default rule of contracting is that a party cannot be bound to an agreement to which they did not consent. *Burch v. Premier Homes, LLC* (2011) 199 Cal.App.4th 730, 745-46. TJ Maxx's authority is inapposite. TJ Maxx has not identified a single California case requiring a plaintiff to arbitrate against a supervisor defendant. The Arbitration Agreement should be abandoned, not reformed.
Arbitration agreements that are "permeated" by unconscionability are unenforceable.

In Reply, Moving Parties contend as follows:

T.J. Maxx did not make the "opt out" process "confusing" and thus "procedurally unconscionable" because T.J. Maxx gave employees the opportunity to opt out of the arbitration. Plaintiff further contends that the opt-out procedure was unconscionable because "doing nothing means the employee is automatically bound." The California Supreme Court has already rejected Plaintiff's arguments. In *Gentry v. Superior Court*, 42 Cal. 4th 443, 468 (2007), the California Supreme Court held that when an employee signs an acknowledgment of an arbitration agreement packet with an opt-out clause, the employee manifests their intent to use their silence, or failure to opt out, as a means of acceptance. Plaintiff does not dispute that she received and signed the Associate Acknowledgment Form, which confirmed that she had received a copy of the "Your Voice. Your Choice." Associate Packet with Io T.J. Maxx's Arbitration Agreement.

Plaintiff contends that the Arbitration Agreement is "procedurally unconscionable" because it "includes pages of information purporting to explain arbitration and its benefits" and "[a]ll of the information is a glowing review of the process." Contrary to Plaintiff's position, T.J. Maxx's Associate Packet and Arbitration Agreement do not merely list the positive benefits of arbitration. The Associate Packet warns the employee that the Arbitrator's decision is "final and legally binding to both sides, subject only to a very limited judicial review." It explains that "the decision of the arbitrator is confidential." It also clearly cautions that "[i]f you agree to participate in the arbitration process, both you and the Company are giving up the right to have an employment-related claim heard in court or by a jury for any dispute covered by the arbitration agreement," and "you are also giving up your right to participate in a class or collective action." Finally, T.J. Maxx advised employees that, "because the arbitration agreement is a legal document, we encourage you to carefully review it and consult with an advisor of your own choosing to ensure you fully understand the scope of the agreement and its impact on your legal rights."

As for pressure to arbitrate, Plaintiff presents no evidence to back up this speculation. Additionally, the 2014 Packet states repeatedly that the Associate will not be retaliated against for declining arbitration. There is no pressure to agree to arbitrate.

Plaintiff mischaracterizes the confidentiality clause in the Agreement. It only applies to the arbitrator's written decision and award. It does not preclude informal pre-hearing investigation as the court was

---

CASE TITLE: Dillon vs. D'entremont                    CASE NO: **30-2019-01051482-CU-WT-CJC**

concerned with in *Ramos*. The parties have the right to full discovery under the AAA rules. See *Sanchez v. Carmax Autosuper Stores California, LLC* (2014) 224 Cal.App.4th 398, 408; *Poublon v. C. H. Robinson Co.* (9th Cir. 2017) 846 F.3d 1251, 1267.

The Agreement does not require Plaintiff to pay unreasonable costs or inappropriate fees. Indeed, she pays no costs of arbitration.

The Delegation Clause is not unconscionable. The Agreement does not require the arbitrator to decide arbitrability. See *AT&T Techs., Inc. v. Comm. Workers of Am.* (1986) 475 US 643,649.

The PAGA Waiver is not unconscionable. In *Iskanian*, the Supreme Court found that a PAGA waiver was against public policy but also affirmed the right to arbitrate because the waiver did not render the arbitration agreement in and of itself unconscionable. See also *Poublan*, 846 F.3d at 1264.

Plaintiff's claim that she did not understand the Agreement is false. In three different places in the 2014 Packet, she was directed, in Spanish, to a Spanish language translation of the Agreement. Plaintiff's supporting declaration is in English, and there are no indicia that she required a translation into Spanish to sign her declaration.

Finally, Moving Parties contend that any unconscionable provisions may be severed.

<u>Analysis</u>:

CCP §1281.2 sets forth the requirements for a motion/petition to compel arbitration. It provides in pertinent part:

"On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists…."

California has a strong policy favoring arbitration agreements. See, *St. Agnes Med. Ctr. v. PacifiCare of Calif.* (2003) 31 Cal.4th 1187, 1195. A party opposing arbitration, on grounds such as waiver, bears the burden of proof. (*Id.*).

A party moving to compel arbitration must make an initial showing as to three factors: (1) The existence of written agreement to arbitrate; (2) A demand to arbitrate and refusal by the party opposing arbitration; and (3) Proof that the arbitration agreement covers the dispute at issue. *Mansouri v. Superior Court* (2010) 181 Cal.App.4th 633. See, *Rosenthal v. Great Western Fin'l Securities Corp.* (1996) 14 Cal.4th 394, 413. Moving party's burden – by a preponderance of the evidence – is to state the provisions of the written agreement and the provision providing for arbitration. CRC rule 3.1330.

If the opposing party does not establish that any of the exceptions apply, based on admissible evidence, arbitration may not be refused. See, *Correctional Peace Officers Ass'n v. State of Calif.* (2006) 142 Cal.App.4th 198, 205, and *Rowland v. PaineWebber, Inc.* (1992) 4 Cal.App.4th 279, 285.

Here, the Defendant argues that the Arbitration Agreement is subject to the FAA. Thus, the court must first determine whether this is the actually the case.

DATE: 07/31/2019                    MINUTE ORDER                    Page 6
DEPT: C20                                    34                         Calendar No.

APPENDIX 50

CASE TITLE: Dillon vs. D'entremont                    CASE NO: **30-2019-01051482-CU-WT-CJC**

---

*Application of the Federal Arbitration Act Generally.*

Both state and federal law provide for enforcement of contractual arbitration. Federal law governs arbitration under contracts "involving interstate commerce" unless the parties agree otherwise. The Federal Arbitration Act ("FAA", 9 USC §§ 1-14) governs contractual arbitration in written contracts involving interstate or foreign commerce or maritime transactions. 9 USC §§ 1, 2. The FAA preempts conflicting state laws. *Southland Corp. v. Keating* (1984) 465 US 1, 12.

The subject Arbitration Agreement provides that the Agreement is to be governed solely by the FAA and not state law (9 USC § 1, et. seq.), as well as stating that the Agreement "…evidences a transaction involving interstate commerce." (*Koch Dec. Exh. B, pg.1*). The party claiming that the contract involves interstate commerce and that the FAA preempts state law has the burden of proof. See *Woolls v. Superior Court* (2005) 127 Cal.App.4th 197, 211-14; *Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 179.

A review of the Defendant's supporting evidence shows that Defendant failed to establish that it is engaged in interstate commerce, other than the recitation in the Agreement itself.

When no evidence is offered, wording of agreement, not interstate commerce analysis, determines applicable law. *Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 179. (but see *Lane v. Francis Capital Mgmt. LLC* (2014) 224 Cal.App.4th 676, 687-88). *Valencia* and *Lane* create a split of authority on the issue of whether a party claiming FAA preemption must provide evidence of interstate commerce to invoke the FAA. If the court limits its review to the face of the Arbitration Agreement, it clearly states that "This Agreement is governed by the Federal Arbitration Act, 9 USC § 1 et seq…." Plaintiff's Opposition fails to raise the issue and limits her arguments to cases under CAA, not FAA.

If the Agreement is subject to FAA arbitration, a number of the defenses raised by Plaintiff fall to federal preemption. If there is an enforceable contract, the parties agreed that arbitration thereunder shall be governed by the FAA.

Turning to Defendants' required evidentiary showing:

*(1) The existence of written agreement to arbitrate.* Defendants present the declaration of Alex Koch, its manager of associates. Mr. Koch declares that in January of 2014, Defendant's parent company, TJX, distributed a 12 page packet (the "2014 packet") announcing the imposition of an arbitration program to all employees. (*Koch Dec. ¶ 7, Exh. A*). The 2014 packet contained an acknowledgement form, a copy of the arbitration agreement, and a prepaid return envelope. (Id. ¶ 9). The packet provided that the Associate was required to decide whether or not to participate in arbitration and advise TJX by 3/12/14, and that if the Associate failed to opt out of arbitration by 3/12/14, he/she would be bound by the Arbitration Agreement. (*Id, Exh. A, pg. 3*). The 3/12/14 deadline is emphasized in a half dozen different places in the 2014 packet.

Plaintiff acknowledged receipt of the 2014 packet on 1/23/14. (*Koch Dec. ¶ 10, Exh. A pg. 1*). Finally, Defendant presents evidence that Plaintiff did not opt out of the Arbitration Agreement. (*Id. ¶¶ 12 & 13, Exh. C*). Based upon the foregoing, the Defendants have shown that Plaintiff entered into a written agreement to arbitrate.

*(2) A demand to arbitrate and refusal by the party opposing arbitration.* Defendants present the declaration of attorney Michael Afar, who declares that he made demand upon Plaintiff's counsel to submit to arbitration, and that Plaintiff refused to do so. (*Afar Dec. ¶¶ 3-4*).

---

DATE: 07/31/2019                    MINUTE ORDER                    Page 7
DEPT: C20                              35                          Calendar No.

APPENDIX 51

CASE TITLE: Dillon vs. D'entremont                    CASE NO: **30-2019-01051482-CU-WT-CJC**

---

*(3) Proof that the arbitration agreement covers the dispute at issue.* The Agreement provides:

"Except as it otherwise provides, this Agreement applies to any dispute, past, present or future, arising out of or related to Associate's employment with The TJX Companies, Inc. or one of its affiliates, successors, subsidiaries or parent companies (collectively, "TJX" or the "Company") or termination of employment regardless of its date of accrual and survives after the employment relationship terminates ...."

(*Koch Dec. Exh. B*),

The Plaintiff's wage and hour claims, wrongful termination, battery, and discrimination claims all "arise out of" the Plaintiff's employment with a subsidiary of TJX, Defendant TJ Maxx of CA, LLC, and therefore fall within provisions of the Arbitration Agreement.

Based upon the foregoing, Defendant TJ Maxx of CA, LLC has made an adequate showing of the existence of a written agreement to arbitrate.

*Non-Signatory*

Defendant Bonnie d'Entremont is not an identified party to the Arbitration Agreement. (*Koch Dec. Exh. B*). Certain persons who did not sign the agreement to arbitrate may be entitled to enforce it and prosecute the arbitration in their own names. *Gravillis v. Coldwell Banker Residential Brokerage Co.* (2006) 143 Cal.App.4[th] 761, 772. This includes third party beneficiaries (*Macaulay v. Norlander* (1992) 12 Cal.App.4th 1, 7-8), and agents. (*Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 418).

In *Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 614-15, the Court of Appeal noted:

"There are, however, "exceptions to the general rule that a nonsignatory ... cannot invoke an agreement to arbitrate, without being a party to the arbitration agreement." (*Westra*, supra, 129 Cal.App.4th at p. 765, 28 Cal.Rptr.3d 752.) One such exception provides that when a plaintiff alleges a defendant acted as an agent of a party to an arbitration agreement, the defendant may enforce the agreement even though the defendant is not a party thereto. (E.g., *Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 418, 220 Cal.Rptr. 807, 709 P.2d 826 (Dryer); *RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1520, 81 Cal.Rptr.3d 892 (RN Solution ); *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1210, 78 Cal.Rptr.2d 533 (24 Hour Fitness ).) "Here, the operative complaint alleged: 'At all times relevant herein, Defendants, and each of them, acted as an agent of each other Defendant in connection with the acts and omissions alleged herein.' It also alleged that in soliciting Katherine to act or refrain from acting and providing her with information, 'Defendants were acting as the actual or ostensible agents of the other Defendants.' The operative complaint further alleged that Westlake, in all of his dealings with Katherine, 'acted on behalf of, and as the authorized agent of,' all of the other defendants. Accordingly, as alleged agents of parties to the agreements containing arbitration clauses, AFI, Westlake, WGG, IDS and RiverSource are also entitled to compel arbitration of John's claims against them."

(204 Cal.App.4[th] at 614)

Contrary to Plaintiff's attempts to distinguish the appellate authorities cited by Defendants, the opinions holding that an agent of a principal may invoke the right to compel arbitration as non-signatories are not

---

DATE: 07/31/2019                    MINUTE ORDER                    Page 8
DEPT: C20                              36                         Calendar No.

APPENDIX 52

CASE TITLE: Dillon vs. D'entremont                    CASE NO: **30-2019-01051482-CU-WT-CJC**

---

limited to specified types of agents. Plaintiff's complaint alleges that Defendant d'Entremont was acting as: (i) the Store Manager for Fountain Valley (*Compl. ¶ 4*); and (ii) a managing superior for the Fountain Valley store (Id. ¶¶ 11 & 12). Inherent in these relationships the fact that Defendant d'Entremont was acting as an agent of Plaintiff's employer, Defendant TJ Maxx of CA, LLC. Ms. d'Entremont has the right individually to enforce the Arbitration Agreement.

The burden now shifts to Plaintiff to show grounds not to enforce the Arbitration Agreement. (See *St. Agnes Med. Ctr. v. PacifiCare of Calif.*, supra). Plaintiff's Opposition raises a number of defenses, each of which is addressed in the order raised below.

*1. No Agreement/ Failure to Understand Arbitration Agreement*

Plaintiff declares that she did not recall receiving the 2014 packet containing the Arbitration Agreement and that she was not told of the implications of not opting out of arbitration. (*Dillon Dec. ¶ 4*). The fact that Plaintiff does not presently recall receiving the 2014 packet does not establish that she did not receive it. She also fails to provide evidence refuting her signature on the receipt acknowledging that she received the 2014 packet containing the Arbitration Agreement. (*Koch Dec. Exh. A, pg. 1*).

Plaintiff's claim that she was not advised as to the effect of not opting out or arbitration are belied by the clear and unambiguous language in the packet, which clearly and repeatedly states that arbitration is not mandatory to continue working, that arbitration involves not going to trial, and a waiver of certain rights, including collective litigation.

A party's failure to read or understand the arbitration clause is generally no defense. *Madden v. Kaiser Found. Hosps.* (1976) 17 Cal.3d 699, 710; *Gold v. Deutsche Aktiengesellschaft* (2nd Cir. 2004) 365 F3d 144, 149.

Contrary to the Plaintiff's arguments, courts have found that an employer may require an employee to arbitrate a dispute based on a revised provision in the employee handbook that the employee accepted by continuing employment after receiving reasonable notice of the revision. *Davis v. Nordstrom, Inc.* (9th Cir. 2014) 755 F3d 1089, 1092-1094 (applying California law). In *Davis*, the employer was not required to advise the employee that continued employment after receiving notice is deemed acceptance of the new terms of employment. Here, there was more than the 30 days' notice required by *Davis*; and here, unlike the employee in *Davis*, Plaintiff was given the option to opt out of arbitration.

For the foregoing reasons, Plaintiff fails on this defense.

*2. Unconscionability*

The same unconscionability analysis is applied to commercial, consumer and employment contracts. *Walnut Producers of Calif. v. Diamond Foods, Inc.* (2010) 187 Cal.App.4th 634, 642-44. Arbitration clauses are often found in adhesion contracts. "Unconscionable" provisions in such contracts may be unenforceable, at least under state law. See *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 113-15.

Both procedural and substantive unconscionability must be present for the court to refuse to enforce a contract under the doctrine of unconscionability. *Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1063.

---

DATE: 07/31/2019                    MINUTE ORDER                    Page 9
DEPT: C20                               37                         Calendar No.

APPENDIX 53

CASE TITLE: Dillon vs. D'entremont                  CASE NO: **30-2019-01051482-CU-WT-CJC**

*(A) Adhesion.* Here, Plaintiff submits no evidence showing that this was a contract of adhesion, i.e. the product of "take it or leave it" negotiations. Indeed, the only evidence as to the formation of the agreement is that Plaintiff does not recall its formation. (*Dillion Dec.* ¶ *4*). Defendants' evidence shows that Plaintiff had an opportunity to continue her employment without agreeing to arbitration, and that arbitration was purely optional. (*Koch Dec.* ¶ *14*). Thus, there is no showing that the Arbitration Agreement was a contract of adhesion. That having been said, a finding of adhesion is not a "prerequisite for a finding of unconscionability." *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1408-10.

*B. Procedural Unconscionability.* "Procedural unconscionability" concerns the manner in which the contract was negotiated and the parties' circumstances at that time. It focuses on the factors of "oppression or surprise due to unequal bargaining power …" *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1243. Plaintiff testifies that she does not recall receiving the 2014 packet, so she has not provided evidence of procedural unconscionability. Plaintiff's argument that the opt-out provision was confusing is belied by the actual documents, which are quite straightforward. (*Koch Dec. Exh. A*). Plaintiff presents no evidence that the Arbitration Agreement did not meet her reasonable expectations.

As for the negotiation of the Arbitration Agreement, there is no evidence provided by Plaintiff as to the formation of the Agreement because she does not recall obtaining the 2014 packet with the Arbitration Agreement, although Defendants' evidence reflects that Plaintiff acknowledged receipt of the 2014 packet in writing.

While the terms of employment *typically* are very one sided, as to the Arbitration Agreement, the Plaintiff was entitled as a matter of right to reject it after several months' notice of the right to do so and still retain her employment. Thus, there was no inequality of bargaining power to the Arbitration Agreement.

Having concluded that the party resisting arbitration – i.e. Plaintiff – must make a showing of both procedural and substantive unconscionability. *Ramos v. Superior Court, supra*, the court must grant the petition. Nevertheless, the court analyzes the merits of the substantive unconscionability claims, as follows:

*C. Substantive unconscionability.* Substantive unconscionability focuses on the terms of the agreement and whether those terms are "overly harsh or one-sided." *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 910-11.

*(i) Confidentiality Clause.* Plaintiff argues that the confidentiality clause in the Arbitration Agreement renders it substantively unconscionable, citing *Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1066 and *Davis v. O'Melveny & Meyers* (9th Cir. 2007) 485 F.3d 1066, 1078. (Effective 5/14/19, *Ramos* was being considered for review by the California Supreme Court) The court in *Ramos* found that the employment contract for employment was a contract of adhesion (28 Cal.App.5th at 1064), and that the employment contract violated *Armendariz* in a number of respects before beginning to discuss the effect of the confidentiality clause. The confidentiality clause in the instant case reads as follows: "Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor the Arbitrator may disclose the existence, content, or results of any arbitration hereunder without prior written consent of all parties." This provision is not limited to the decision and award; it includes the very existence of an arbitration proceeding. Thus, the court finds that the confidentiality clause is substantively unconscionable.

*(ii) Delegation Clause.* Plaintiff argues that because there is a contractual exception to disputes being decided by the arbitrator for the court to decide the issue of waivers of class, collective, or representative

DATE: 07/31/2019                           MINUTE ORDER                           Page 10
DEPT: C20                                        38                                  Calendar No.

APPENDIX 54

CASE TITLE: Dillon vs. D'entremont                    CASE NO: **30-2019-01051482-CU-WT-CJC**

actions, the delegation clause is fatally uncertain, citing *Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1560. The type of delegation clause discussed in *Malone* is one whereby the arbitrator determines arbitrability of a dispute. The *Malone* court noted that if a party is attacking the delegation clause (as opposed to the entire arbitration agreement), it is a separate issue, and the attacking party must demonstrate both types of unconscionability. (226 Cal. App.4th at 1560-61). As discussed above, Plaintiff makes no showing of procedural unconscionability.

The *Malone* court found that the delegation clause at issue was not unclear and was not unconscionable. Cases cited by Plaintiff are not that helpful. In *Chin v. Advanced Fresh Concepts Franchise Corp.* (2011) 194 Cal.App.4th 704, the Court of Appeal held that even assuming a provision in an adhesive business franchise contract delegating to the arbitrator the authority to determine the validity of the arbitration provision was unconscionable, the trial court was required to enforce the arbitration provision, since declaring the delegation clause unenforceable would serve no purpose, where no other term of the arbitration provision was unconscionable. (194 Cal.App.4th at 711).

Here, Plaintiff has failed to make any mandatory showing of procedural unconscionability; thus, a finding that the delegation clause is substantively unconscionable, without more, is not grounds to deny arbitration.

*(iii) Class/Collective Action Waiver.* The Agreement provides for a waiver of the right to bring a collective or class action (Koch Dec. Exh. B, pg. 3, ¶ 5(a) & (b)). However, because the Agreement falls within the FAA, the waiver is not grounds to deny arbitration. *Iskanian v. CLS Transp. Los Angeles, LLC* (2014) 59 Cal.4th 348, 359-60.

*(iv) PAGA Waiver.* Although the Arbitration Agreement is subject to the FAA, the argument that the PAGA waiver constitutes substantive unconscionability has merit. See *Iskanian v. CLS Transp. Los Angeles, LLC, supra at* 382-389. That having been said, the PAGA waiver specifically recites that it is severable. (*Koch Dec. Exh. B, pg. 3, ¶ 5(c)*).

*(v) Severability.* Plaintiff argues that if an employment arbitration agreement contains more than one unlawful provision, it is permeated with unconscionability, and the offensive terms cannot be severed, citing *Murphy v. Check "N Go of California, Inc.* (2007) 156 Cal.App.4th 138, 149. The *Murphy* court based its ruling on the fact that there was evidence of both procedural and more than one issue of substantive unconscionability (156 Cal.App.4th at 149 [arbitrator to decide unconscionability and class action waiver]). Here, the class action waiver is not a bar to arbitration, and the delegation clause is enforceable. The court severs the PAGA waiver and confidentiality clauses in the Arbitration Agreement because they are substantively unconscionable but does not find that the Agreement is "permeated with unconscionability" such that it cannot be enforced.

Because Plaintiff fails to make any showing of procedural unconscionability in connection with the negotiation and acceptance of the Arbitration Agreement, Plaintiff fails to establish that the doctrine of unconscionability bars enforcement of the Arbitration Agreement. Accordingly, the court GRANTS the motion – as modified – and orders Plaintiff to submit to binding arbitration.

This action is stayed pending completion of arbitration. The court sets an arbitration review on February 3, 2020 at 9:00 A.M.

Moving party to give notice.

S

APPENDIX 55

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**<br>**Branch Name:** Spring Street Courthouse<br>**Mailing Address:** 312 North Spring Street<br>**City, State and Zip Code:** Los Angeles CA 90012 | |
| **SHORT TITLE:** NORA CASTELLANOS vs ALEJANDRA ACEVES, et al.<br><br>**NOTICE OF CONFIRMATION OF ELECTRONIC FILING** | **CASE NUMBER:**<br>23STCV02863 |

The Electronic Filing described by the below summary data was reviewed and accepted by the Superior Court of California, County of LOS ANGELES. In order to process the filing, the fee shown was assessed.

**Electronic Filing Summary Data**

Electronically Submitted By:  Tristar Software
Reference Number: JTI414952
Submission Number: 23LA01166842
Court Received Date: 08/03/2023
Court Received Time: 1:13 pm
Case Number: 23STCV02863
Case Title: NORA CASTELLANOS vs ALEJANDRA ACEVES, et al.
Location: Spring Street Courthouse
Case Type: Civil Unlimited
Case Category: Other Personal Injury/Property Damage/Wrongful Death
Jurisdictional Amount: Over $25,000
Notice Generated Date: 08/03/2023
Notice Generated Time: 1:28 pm

| **Documents Electronically Filed/Received** | **Status** |
|---|---|
| Motion to Compel Arbitration | Accepted |
| Memorandum of Points & Authorities | Accepted |
| Request for Judicial Notice | Accepted |
| Declaration (name extension) | Accepted |

Declaration (name extension)                    Accepted


Order (name extension)                          Accepted



**Comments**
Submitter's Comments:

Clerk's Comments:

**Electronic Filing Service Provider Information**
Service Provider: Tristar Software
Contact: Tristar Software
Phone: (805) 227-1213

# EXHIBIT 6

# JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.:  2:24-cv-00709-JLS-MRW                          Date: April 25, 2024
Title:  Juan Manuel Olivares Romero v. Marshalls of CA LLC et al

Present: **HONORABLE JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

  Charles Rojas                                                         N/A
Deputy Clerk                                                        Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:     ATTORNEYS PRESENT FOR DEFENDANT:
Not Present                                             Not Present

**PROCEEDINGS:   (IN CHAMBERS)  ORDER GRANTING DEFENDANT'S
MOTION TO COMPEL ARBITRATION (Doc. 17)**

    Before the Court is Defendant Marshalls of CA, LLC's motion to compel
arbitration.  (Mot., Doc. 17.)  Plaintiff Juan Manuel Olivares Romero opposed, and
Defendant replied.  (Opp., Doc. 19; Reply, Doc. 20.)  The Court finds this matter
appropriate for decision without oral argument and VACATES the hearing set for April
26, 2024, at 10:30 a.m.  *See* Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

    Marshalls produced a copy of their Arbitration Agreement and Romero's
Associate Acknowledgement Form.  (Arbitration Policy, Doc. 17-3, Ex. A; Romero
Acknowledgment Form, Doc. 17-3, Ex. B)  The latter provides that the signee
"understand[s] that I am covered by the [Arbitration] Agreement unless I decline to
participate . . . within 45 days from my date of hire."  (Romero Acknowledgment Form.)
Marshalls' records reflect that Romero did not opt out of the Arbitration Agreement.
(Koch Decl., Doc. 17-3 ¶ 14.)  As such, Marshalls has met its burden of proving that the
parties formed an agreement to arbitrate.  Moreover, the Court rejects Romero's
argument that the agreement is procedurally unconscionable: Romero had the ability to
opt out of the agreement, and the fact that Romero had to click on a hyperlink to access
the AAA Employment Arbitration Rules does not render the agreement procedurally
unconscionable.  Finally, the Court rejects Romero's argument that the agreement is

---

**CIVIL MINUTES – GENERAL**                                                     1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:24-cv-00709-JLS-MRW                                Date: April 25, 2024

Title:  Juan Manuel Olivares Romero v. Marshalls of CA LLC et al

substantively unconscionable, as a fair reading of the Arbitration Agreement and the incorporated AAA Rules undermines the factual premises of Romero's contentions.

Therefore, Marshalls' motion to compel arbitration is GRANTED, the parties are ORDERED to arbitrate, and this action is STAYED pending arbitration.  The parties are ordered to file a status report with this Court **every six months or within 10 days** of the conclusion of the arbitration, whichever comes first.

Initials of Deputy Clerk: cr

**APPENDIX 60**

# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| NATHANIEL OCHS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | C.A. NO.  5:24-CV-00309 |
| v. | § | |
| | § | |
| TJX COMPANIES, INC. d/b/a TJX | § | |
| DISTRIBUTION CENTER, | § | |
| | § | |
| Defendant. | § | |

**DECLARATION OF LINDA SCHOONMAKER IN SUPPORT OF DEFENDANT'S**
**MOTION TO COMPEL ARBITRATION AND STAY ACTION**

1.      I, Linda Schoonmaker, submit this Declaration in support of the accompanying

Motion to Compel Arbitration, filed by Defendant The TJX Companies, Inc.

2.      I am a lead counsel for Defendant in this case and I know the facts testified to in

this Declaration to be true based upon my personal knowledge.

3.      On April 1, 2024, I advised Plaintiff's counsel by email that Plaintiff was a party

to an arbitration agreement, provided Plaintiff's counsel with a copy of the arbitration agreement,

and asked if he was open to a joint motion to stay the lawsuit pending arbitration.

4.      On April 8, 2024, I sent Plaintiff's counsel documents by email demonstrating

that Plaintiff had not opted out of the TJX Arbitration Agreement.  On April 16, 2023, Plaintiff's

counsel advised me that Plaintiff would oppose arbitration, thereby necessitating this opposed

Motion.

5.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

information is true and correct.

Executed this 6th day of May, 2024, in Houston, Texas.

Linda Schoonmaker