UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NATHANIEL OCHS, *Plaintiff* | § § § | |
| v. | § § | CIVIL ACTION NO. 24-CV-00309-OLG |
| TJC COMPANIES, INC. d/b/a TJX, DISTRIBUTION CENTER *Defendant* | § § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY LAWSUIT

Plaintiff, Nathaniel Ochs, submits this, his Response to Defendant's Motion to Compel Arbitration and Stay Lawsuit, and shows as follows:

### Background

Plaintiff, Nathaniel Ochs, started working for the TJ Maxx warehouse known as TJX Distribution Center on Nov. 15, 2021. He was referred to TJ Maxx by a non-profit known as Wounded Warriors Project. Wounded Warriors helps veterans assimilate back into society. Other veterans were referred to the TJX Distribution Center by Wounded Warriors. Plaintiff Ochs has a 90% VA disability rating. He has been diagnosed with PTSD, Depression, Anxiety and other illnesses. Those ailments stem from his war-time service. Mr. Ochs served in Afghanistan from 2019-2020 as an Infantryman.

Defendant claims Mr. Ochs was presented an arbitration agreement during his orientation Nov. 15-19, 2021. But, TJX has presented no witness who was actually present for that orientation and can so state. Indeed, Even Vice-President Alex Koch does not claim the agreement was actually presented to Mr. Ochs. And, the document found at Def. Ex. 1(B) has *not* been presented to Plaintiff or to Plaintiff's attorney prior to Defendant's Motion to Compel Arbitration. No mention was made of arbitration during the EEOC investigation.

## Standard of Review

The standard of review for denial of a motion to compel arbitration is de novo. *Gallagher v. Vokey*, No. 20-11000, 860 F. App'x 354, 356 (5th Cir. July 1, 2021). The quantum of evidence necessary to prove or disprove the existence of an agreement to arbitrate is not clear in the Fifth Circuit. But, the Fifth Circuit has required the party resisting arbitration to bear the burden of showing that he is entitled to a jury trial despite the Federal Arbitration Act. *Gallagher, id.* Other circuits have likened the evidentiary requirements of a motion to compel arbitration to that of Federal Rule 56. *Id.* If the party seeking arbitration offers competent evidence of an agreement, the opposing party must produce at least "some evidence" supporting his position. *West v. Brady Pate, Director*, No. 3:23-CV-398 (S.D. Miss. Oct. 13, 2023), slip op., p. 2. That evidentiary standard is similar to that of summary judgment. *Gallagher, id.*

The Federal policy favoring arbitration does not apply to the determination of whether there is a valid arbitration agreement. Instead, ordinary contract principles apply. *Carillo v. Roicom USA, LLC*, 486 F.Supp.3d 1052, 1058 (W.D. Tex. 2020). Applying a summary judgment type standard, courts generally give deference to the claims of the non-movant. *Gassaway v. Beacon Fabrication, LLC*, No. 3:20-CV-983-L-BH, 2021 WL 1523008, *4 (N.D. Tex. Feb. 24, 2021).

## Argument

1. The Defendant has weighed evidence.

The movant in a motion to compel arbitration should allow the non-movant "deference." *Gassaway, supra*. "Similar to a motion for summary judgment and subject to the same evidentiary standards, the party alleging an arbitration agreement must present summary proof that the dispute is subject to arbitration . . . and the party resisting arbitration may contest the opponent's proof or present evidence supporting the elements of a defense to enforcement." *Rocha v. Macy's Retail Holdings, Inc.*, No. EP-17-CV-73-PRM, 2017 WL 4399575, at *2 (W.D. Tex. Oct. 3, 2017). An employer must show that the employee received notice of the employer's arbitration policy and accepted. *Towing Co. v. Akin*, 409 S.W.3d 835, 838 (Tex. App.—Dallas 2013, no pet.). The Texas Supreme Court has stressed the importance of actual notice of the arbitration agreement. *In Re*

*Dallas Peterbilt*, 196 S.W.3d 161, 162 (Tex. 2006). There cannot be a meeting of the minds if one mind had no notice. Allowing deference to the non-movant, Plaintiff Ochs has received no such notice.

Defendant claims in its motion that Plaintiff "received" the packet containing the arbitration agreement. TJX points to paras. 6, 8 and 9 of the Alex Koch Declaration. Mr. Koch is the Vice-President for HR. He offices in Framingham, Massachusetts. He does not work in San Antonio. But, in reality, those paragraphs nowhere state that Mr. Ochs actually "received" the packet or that he ever received a copy of the arbitration agreement. The word "receive" does not appear in Mr. Koch's statement.

Defendant also claims the "tracking software" ensured that Plaintiff Ochs received the packet and arbitration agreement. Defendant points to para. 8 of the Koch Declaration. But, again the Declaration does not so state. Mr. Koch simply states in para. 8 that tracking software ensured unspecified employees received the packet. He does not refer to any specific employee. VP Koch nowhere states affirmatively that the tracking software was used in regard to Plaintiff. Nothing in VP Koch's statement attests that Mr. Ochs was given or shown a copy of the arbitration agreement. The Defendant has cited testimony which does not exist. Allowing deference to the non-movant, Defendant has not carried its burden. Defendant has weighed the evidence, not construed it.

It might be possible to infer from Koch's statement that employees in general are "tracked." But, that is not the same as saying Ochs in particular was tracked. The burden is on the employer to first show the existence of an agreement.

### Personal Knowledge

Too, VP Koch's Declaration must be based on personal knowledge. Yet, his Declaration provides no basis for the Vice-President possessing personal knowledge about the arbitration agreement ever having been presented to Ochs. His knowledge concerns personnel files, not presentations. Mr. Koch never explains how or when he might have become aware that one specific employee named Nathaniel J. Ochs ever saw the arbitration agreement. "Supporting and opposing affidavits shall be made on personal knowledge." *DirecTV v. Budden*, 420 F.3d 521, 529 (5th Cir. 2005), quoting Fed.R.Civ.Pro. Rule 56(e). That personal knowledge should, at least be capable of being

3

inferred. *Id*. But, here, there is no basis on which to infer that VP Koch has personal knowledge that Plaintiff was ever shown or given a copy of the arbitration agreement.

Koch works in Massachusetts. He does not claim to have ever been to San Antonio or to have ever participated in any orientation in this city. Mr. Koch never states how or when Mr. Ochs was allegedly shown a copy of the arbitration agreement. At best, Mr. Koch simply testifies that a copy of the arbitration agreement was found in Plaintiff's personnel file. See Def. Ex. 1(A), para. 9. But, that some agreement is found in someone's personnel file does not in itself mean that that particular someone ever saw the agreement. TJX has weighed evidence and has attempted to create evidence that does not exist.

In Para. 10, Mr. Koch states that "in connection with his November 15, 2021 hire," Plaintiff then had 45 days to decline the alleged arbitration agreement. But, even that statement does not state clearly that Plaintiff ever actually saw the alleged arbitration agreement. That sentence does not state affirmatively that Ochs did actually receive an arbitration agreement on Nov. 15. "In connection with" is capable of many different meanings. That sentence could simply mean that Ochs allegedly received some arbitration agreement on some unknown date, which agreement had some tangential connection to his hire date of Nov. 15.

Compare this language to the language VP Koch used in a different lawsuit. In *Spaeny v. TJX*, filed in the Central District of California, VP Koch said:

> "On that same day [Feb. 11, 2018], HomeGoods provided Plaintiff a copy of the Associate Packet."

Ex. B, Koch Decl. used as evidence in *Spaeny v. TJX*. Plaintiff asks this Court to take judicial notice of evidence used by the same Defendant in a separate Federal lawsuit. Under Fed.R.Ev. Rule 201, a Court may take judicial notice of other related proceedings and records in cases before that court. *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1277 n. 33 (5th Cir. 1978). A court may take judicial notice of facts not subject to reasonable dispute from certain sources, such as public filings with state agencies. Midcap media Finance, LLC v. Pathway Data, Inc., 929 F.3d 310, 315 (5th Cir. 2019).

4

In 2021 Declaration, VP Koch submitted a Declaration in support of TJX' Motion to Compel Arbitration in a lawsuit known as *Spaeny v. TJX*, No. 2:21-cv-06649-DMG. That Nov. 24, 2021 Declaration states clearly when the employee received a copy of the arbitration agreement. Koch provides a specific date. He explicitly said the agreement was "provided" to the employee. VP Koch then appended a copy of that agreement to his statement.

VP Koch used the same language in a third lawsuit seeking to compel arbitration, known as *Romero v Marshalls*. VP Koch said a copy of the packet was "provided" to the employee. That packet included a copy of the arbitration agreement. See Pl. Ex. C, Koch Declaration from *Romero v. Marshalls of CA*. Plaintiff asks the Court to take judicial notice of VP Koch's Declaration in *Romero v. Marshalls of CA*, No. 2:24-cv-00709 (C.D. Calif.). Yet, VP Koch did not use that sort of language in his Declaration for the instant lawsuit, *Ochs v. TJX*. Yet, this lawsuit involves the very same issue, whether an employee had notice of an arbitration agreement. After this many lawsuits, it is fair to assume VP Koch knows how to phrase his Declarations.

## 2. The party seeking to compel arbitration has the burden to show the existence of a valid arbitration agreement.

Whether there is a valid agreement between the parties is determined according to state law. In this case, that state is Texas. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003) *citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Under Texas law, a valid contract requires "(1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App. San Antonio 1997, no pet.). When both parties sign an agreement evidencing an objective intent to submit disputes to binding arbitration, the arbitration agreement is valid. *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 516 (Tex. 2006).

A party seeking to compel arbitration must establish the existence of a valid arbitration agreement. *Henry v. Cash Biz, LLP*, 551 S.W.3d 111, 115 (Tex. 2018); *Davidson, supra*. The Defendant overlooks the first holding in *Ellis v. Schlimmer*, 337

5

S.W.3d 860, 861-862 (Tex. 2011). *Ellis* states: "A party attempting to compel arbitration must first establish the existence of a valid arbitration agreement." *Ellis*, 861-862, citing *Davidson, supra*. In order to show the existence of a valid agreement, the party seeking to compel arbitration must show that Mr. Ochs signed the agreement with sufficient evidence such that "reasonable people could not differ in their conclusions." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

Mr. Ochs states in his Declaration that he signed no arbitration agreement and that no information regarding an arbitration agreement was presented to him during the five day orientation. He adds that Sunnie Harrington was not qualified to discusses arbitration agreements. Her job was training, not other areas of HR. Ms. Harrington was the only TJX employee leading the newly hired employees through the orientation process. See Ex. A, N. Ochs Declaration, p.1.

Under Texas law, whether the arbitration agreement at issue represents a valid agreement is governed by the Electronic Transactions Act passed in 2007. See Bus.&Com.C., Chap. 322. This effect of an electronic signature attributed to a person is determined from the context and surrounding circumstances at the time of its creation. Tex.Bus.&Com,C. §322.009(b). In the case of an agreement with a purported electronic signature, the agreement may only be proven up if the electronic signatures can be established to be those of persons alleged to have signed the agreement. *Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 205 (Tex. 2021) *citing* Tex. Bus. & Com. Code § 322.009(a). This may be accomplished by a "showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." *Id.*

A "security procedure" is defined as a "procedure employed for the purpose of verifying that an electronic signature, record, or performance is that of a specific person or for detecting changes or errors in the information in an electronic record, including the use of algorithms or other codes, identifying words or numbers, encryption, or callback or other acknowledgment procedures." *Aerotek*, at 205, *citing* Tex.Bus.&Com.C. §322.002(13). "The efficacy of the security procedure provides the link between the electronic record stored on a computer or in a database and the person to whom the record is attributed. A record that cannot be created or changed without unique, secret

credentials can be attributed to the one person who holds those credentials." *Aerotek*, at 206.

### No Explanation of Security Procedure

Defendant's motion and exhibits do not satisfy the *Aerotek* requirements. The only witness is an HR representative, Alex Koch. Mr. Koch works at the TJX facility in Framingham, Massachusetts. He cannot and does not attempt to describe the procedures actually used at the TJX facility in San Antonio, Texas. Mr. Koch is an HR person. He cannot and does not try to describe the security protocols used during the TJX onboarding process. He testifies in his statement that all new employees are given a hard copy of the Arbitration agreement. Def. Ex. 1, 8 & 9. But, one new employee named Nathaniel Ochs testifies to the opposite, that he did not see anything about arbitration. Indeed, Ochs provides all the papers he received at the onboarding process in November, 2021.

Nothing in those 25 pages points to or mentions arbitration. Mr. Ochs says he received no hard copy of an arbitration agreement. See Ex. A(1). Those 25 pages include nothing more than an Employee Handbook and login information. Plaintiff Ochs said if he had signed an arbitration agreement, then he would have downloaded a copy and would have retained it. Mr. Ochs says in his experience with Docusign, the user is always allowed to download the paper he signs. Ex. A, p. 2. Mr. Ochs' testimony is unrebutted.

Plaintiff Ochs adds that as far as he knew, as the supervisor of many employees, no one knew about any arbitration agreement at TJX. Ex. A, Ochs Decl., p. 2. Mr. Koch does not dispute the testimony of Mr. Ochs. VP Koch was not present at the November, 2021 orientation at the San Antonio facility. He is not competent to discuss what actually occurred. He can only testify to what he believes *should* have occurred. Certainly, during the EEOC process, no mention was made of any arbitration agreement.

Mr. Koch does state flatly that TJX uses "tracking software" to ensure new employees receive the packet which contains the Arbitration Agreement. Def. Ex. 1, para. 8. But, nowhere in his statement does the HR Vice-President actually describe what that tracking software looks like or how it achieves its purpose. His statement doers not describe the security procedure in place to ensure all new employees see the electronic version of the arbitration agreement. Nor does he describe the "security procedure" in place to ensure a specific employee actually signs the Arbitration agreement. There is no

description of a procedure to detect errors. There is nothing in Koch's statement that describes the security procedures required by Tex.Bus.&Com.C. §322.002(13) and as required by *Aerotek*, including the use of algorithms or other codes, identifying words or numbers, encryption, or callback or other acknowledgment procedures. Neither has TJX or NBC provided the Court with a screen shot from its onboarding webpages which would enable the Court to evaluate whether TJX provided Ochs with reasonably conspicuous notice of the agreement. *See, StubHub, Inc. v. Ball* (Tex.App. Hou. 2023), p. 203 (Noting a similar deficiency by StubHub).

  Indeed, Mr. Koch does not claim to have IT expertise, at all. He is a Vice-President of Human Relations. This case differs from that of *Aerotek* in that Aerotek's witness could in fact discuss the security procedure in place that assured only a specific person could affix his/her signature. To enter the Aerotek process, an applicant was required to create for himself a unique personal identifier, a user ID, a password, and security questions, all of which would be unknown to the employer. *Aerotek*, at 206. In *Aerotek*, the employer's witness was involved in the creation of the application software at issue. The court found the employer's witness was sufficiently familiar with the process to discuss its actual operation. *Aerotek*, at 207.

  Too, this case differs from Aerotek in that the ultimate signature was provided not by TJX's unknown software, but by Docusign. Docusign is a well-known third party app that provides electronic signatures to a wide variety of industries. But, TJX has not presented a witness to explain the security procedures to ensure a specific new hire accesses the Docusign software from the TJX platform. In what way or at what point does the software used by NBC or TJC interface with Docusign? What steps are involved to ensure a specific user/employee transitions from TJX software to Docusign software? VP Koch never mentions Docusign in his statement.

### Not Ochs' Signature

  Mr. Ochs testifies that the purported signature found at Def. Ex. 1(B) is not his. He never signs his signature with his middle name spelled out. He always signs his name as "Nathaniel J. Ochs." See Pl. Ex. A, Ochs Decl, p. 3 and Pl. Ex. A(2). The two incident reports at Ex. A(2) were made in December, 2022. Plaintiff signed both as Supervisor as: "Nathaniel J. Ochs."

8

Mr. Ochs' experience with Docusign is that the software requires the user to type in his name. Docusign then forms a signature based on that typed name. Mr. Ochs never would have typed in the name "Joseph." Ex. A, p. 2. The claimed signature at Def. Ex. I(B) is not Plaintiff's. This is unrebutted testimony. Applying a summary judgment-like standard, Ochs' denial would defeat the motion to compel arbitration. *See Hatch v. Jones*, No. 4:18-CV-4146, N.11 (S.D. Tex. Oct. 30, 2019) (Noting Plaintiff's affidavit contradicts the employer's affidavit); *Grant v House of Blues New Orleans Rest. Corp.*, No. 10-CV-3161, 2011 WL 1596207, at *6 (E.D. La. April 27, 2011). The employee swore she had no recollection of signing any of the alleged documents and questioned the authenticity of her purported signatures on two documents which contained arbitration clauses. Applying a summary judgment type standard, the Eastern District found Grant's denial to preclude a finding that Grant entered into an arbitration agreement. *Id.* Mr. Och's denial similarly requires the denial of Defendant's motion.

### 3. Defendant relies on incompetent evidence.

Defendant's evidence is not in admissible form. Plaintiff objects to Defendant's evidence as follows:

- Def. Ex. 1(D): VP Koch asserts that Mr. Ochs' HR record shows that Mr. Ochs "did not start" his New Hire Agreement. Def. Ex. 1, Koch Decl., para. 11. But, Mr. Koch has not shown a foundation for this assertion. Nothing in Ex. 1(D) refers to the alleged arbitration agreement. Koch's Statement at para. 11 points to Def. Ex. 1(D), but Ex. D itself does not explain what the New Hire Agreement does or does not include. In fact, Ex. D says the "New Hire Agreement" was due on Jan. 1, 2021. Yet, Plaintiff Ochs did not start his employment until Nov. 15, 2021, eleven months after the due date. Defendant's Ex. D shows nothing more than that sometime, someday Mr. Ochs needed to start his "New Hire Agreement." Ex. D does not even purport to claim Mr. Ochs was actually required to sign the "New Hire Agreement." No statement and no exhibit explains what the "New Hire Agreement" includes.

- Def. Ex. 1(B): this document purports to be the actual arbitration agreement which an employee must decline. But, the only contemporary document *possibly* indicating it was ever presented to the Plaintiff is Def. Ex. 1(D). Ex. 1(D) makes no specific reference to any arbitration agreement. VP Koch claims Ex. 1(B) was part of the "New Hire Agreement." But, nothing about Ex. 1(B) suggests it is part of a larger document. It has its own pagination system which refers to "TJX Arbitration Agreement," not to some other agreement. The phrase "New Hire Agreement" does not appear anywhere within the body of Ex. 1(B).
- The Koch Declaration: Mr. Koch has not provided the basis for having personal knowledge that Nathaniel Ochs was ever shown the purported arbitration agreement. Nothing in his Declaration suggests that the alleged arbitration agreement was ever given to Ochs. Even if he had so declared, Mr. Koch never explains how or when he would have acquired such personal knowledge.

The best evidence of the mysterious "New Hire Agreement" is the agreement itself. But, Defendant has not provided the alleged "New Hire Agreement" itself. The pagination style and the heading of Ex. 1(B) suggests it is a stand-alone document. It has no paragraph numbers and no heading numbers or other designations suggesting it is an appendix to a larger document. There is nothing about Ex. 1(B) that suggests it is anything other than a stand-alone document – and therefore not part of some mysterious "New Hire Agreement."

Indeed, Mr. Koch is not competent to testify that the documents found at Def. Ex. A, B, C and D were actually shown or provided to Mr. Ochs. VP Koch implies, but never states that the arbitration agreement should be part of the orientation process. Mr. Koch can only testify that perhaps they *should* have been or *might* have been provided to Mr. Ochs. Mr. Koch has provided no information regarding what information are required by company policies to be included in the onboarding process. Where are the policies that explain what onboarding is supposed to look like or include? If Mr. Koch is saying that the arbitration agreement is supposed to be shown to new employees, what company policy says so? Mr. Koch wants the Court to believe the arbitration agreement was part of the orientation, but he never says so. In para. 6 of his statement, VP Koch says all new

10

*Thomas J. Crane*
Thomas J. Crane
T.S.B. No. 05007320

LAW OFFICE OF THOMAS J. CRANE
900 N.E. Loop 410, Suite D306
San Antonio, Texas 78209
(210) 736-1110
(210) 745-4258 Fax
tom@cranelawyer.net

Attorney for Plaintiff

Certificate of Service

I certify that a true copy of the foregoing instrument was electronically filed on the 18th _____ day of May, 2024 with the Clerk of Court using the CM/ECF system which will send notice of such filing to the following counsel:

Linda C. Schoonmaker
Seyfarth Shaw LLP
700 Milam St., Suite 1400
Houston, Texas 77002

*Thomas J. Crane*
Thomas J. Crane